STATE of Wisconsin, Plaintiff-Respondent,

v.

Shantell T. HARBOR,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2009AP1252–CR. Oral argument February 1, 2011.
—Decided May 10, 2011.*

2011 WI 28

(Also reported in 797 N.W.2d 828.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Joseph E. Redding, Glojek Limited,* Milwaukee.

For the plaintiff-respondent the cause was argued by *Michael C. Sanders,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. ANN WALSH BRADLEY, J.   The petitioner, Shuntell T. Harbor,[1] seeks review of an unpublished decision of the court of appeals affirming a circuit court order denying Harbor's postconviction motion.[2] Harbor

---

[1] Although the criminal complaint and the court caption spell the defendant's name "Shantell," her attorney indicated that the proper spelling is "Shuntell." Throughout this opinion, we use the spelling that the defendant indicates is proper.

[2] *State v. Harbor,* No. 2009AP1252–CR, unpublished slip op. (Wis. Ct. App., Mar. 30, 2010), affirming a judgment and order of the circuit court for Milwaukee County, Dennis P. Moroney, Judge.

contends that previously unknown information about her mental health, her addiction issues, and her traumatic upbringing constitute new factors that justify modification of her sentence. In the alternative, she asserts that she received ineffective assistance of counsel when her attorney failed to investigate or present these factors to the circuit court during sentencing.

¶ 2. We conclude that Harbor has not presented any new factor that justifies modification of her sentence. The facts related to Harbor's mental health do not constitute a new factor because Harbor's mental health issues were known to the circuit court and taken into consideration at the time the court imposed sentence. Further, the circuit court appropriately exercised its discretion when it concluded that facts related to Harbor's addiction issues and her traumatic upbringing did not justify sentence modification.

¶ 3. We further determine that Harbor has not demonstrated that she received ineffective assistance of counsel because she has not shown that her attorney's alleged shortcomings were prejudicial. She has failed to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[3] Accordingly, we affirm the court of appeals.

I

¶ 4. The facts of this case are undisputed. Based on three separate incidents that occurred in February of 2008, Shuntell Harbor was charged with three counts: attempted robbery with threat of force, attempted armed robbery with threat of force, and armed robbery

---

[3] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

with threat of force. Brief descriptions of each incident are taken from the criminal complaint.

¶ 5. The attempted robbery charge is based on the statement made by a teller at Community Financial, a check cashing service. According to the statement, Harbor approached the window and handed the teller a note demanding money. The note also suggested that Harbor would shoot if the teller said anything. After the teller pressed the alarm, Harbor fled.

¶ 6. Later the same day, Harbor entered another branch location of Community Financial and approached the lead teller. The attempted armed robbery charge is based on the statement made by that teller. According to the statement, Harbor passed the teller a piece of paper, but the writing was illegible. After the teller told her to rewrite the message, Harbor became angry. Ultimately, the teller could make out the words "money" and "shoot," and she determined that Harbor was attempting to stage a robbery. When the teller failed to give her any money, Harbor put her hand in her pocket in a threatening manner as if she had a gun and stated, "Oh, you're not afraid of this?" The teller left the window and Harbor left the business.

¶ 7. The armed robbery charge is based on an incident that occurred 10 days later at a Hallmark store. The store's cashier told the police that Harbor approached the counter, asked the cashier for money, and then pulled out a butcher knife and pointed it directly at the cashier. The cashier gave Harbor money from both registers and from her wallet, totaling approximately $100.

¶ 8. Harbor was picked up when she jaywalked in front of a police officer. The officer observed that Harbor was carrying a butcher knife in her jacket pocket, and she was placed in custody for carrying a

concealed weapon. Harbor made statements implicating herself in all three crimes. Because she was on probation at the time that these offenses were committed, her probation was revoked.

¶ 9.  Harbor waived her preliminary hearing. After acknowledging that she was facing a maximum punishment of 67.5 years incarceration and a $170,000 fine on the three charges, she pled guilty to all three counts.

¶ 10.  During the plea colloquy, the court circuit expressed an awareness that Harbor was taking medication:

> The Court: Have you had any drugs, medication or alcohol prior to coming to Court today?
>
> The Defendant: No.
>
> The Court: According to this you did, or at least you're receiving some treatment.
>
> The Defendant: Medication, yeah.

¶ 11.  The court confirmed that Harbor's medication was not affecting her ability to understand and appreciate what was happening in court or her ability to make decisions about the case. Ultimately, it accepted Harbor's guilty plea. It did not order a presentence investigation report (PSI).[4]

---

[4] Wisconsin Stat. § 972.15 permits a court to order a PSI. Its "primary purpose . . . is to provide the sentencing court with accurate and relevant information upon which to base its sentencing decision." Wis. Admin. Code DOC § 328.27. A PSI authored by agents of the Department of Corrections will contain information related to the present offense, the defendant's prior criminal record and prior correctional institution record, the victim's statement, the defendant's family

¶ 12. Throughout the plea hearing and the sentencing phase of the proceedings, Harbor was represented by Attorney Gregory Parr. Although Attorney Parr had the opportunity to present a sentencing memorandum at the sentencing hearing, he did not do so.

¶ 13. During sentencing, the prosecutor focused on Harbor's prior convictions: a 1992 conviction for robbery and theft, a 1993 conviction for armed robbery, and a 2006 escape conviction. He argued that Harbor had been in and out of prison for years due to probation revocations, and that she had been released from Taycheedah Correctional Institution only four months prior to committing the three offenses for which she was being sentenced. He contended that the three offenses were themselves serious incidents, and "it's just made more serious by the fact that the defendant does have a prior criminal record." Ultimately, the prosecutor recommended "a substantial prison sentence . . . consecutive to any other sentence she is currently serving," plus restitution.

¶ 14. By contrast, Harbor's attorney recommended "a global sentence for these three offenses of ten years in the Wisconsin State prison" consisting of five years of initial confinement and five years extended supervision. He told the court that Harbor's "record is as indicated by the district attorney. It's not the most extensive." He argued that Harbor had employment history that "is substantial, covering a period of approximately seven years of employment."

¶ 15. Defense counsel asserted that Harbor's mental health was a mitigating factor. He contended

information and personal history, as well as the defendant's present situation and needs and the agent's sentencing recommendation. *Id.*

63

that Harbor was "really an inept robber" and "[i]t's almost like she was asking to be caught. And that may be not too surprising" because she suffers "from both bipolar disorder and fairly severe depression." "In 2007 alone," defense counsel explained, Harbor was "treated as an in-patient at the Milwaukee County Mental Health Complex on three different occasions. She takes medication for her bipolar disorder and her depression."[5]

¶ 16. Defense counsel argued that Harbor's mental health background "goes someway towards explaining" the offenses. He contended that the sentence he had recommended was "an appropriate one because of her psychological problems" and because of other mitigating factors. He noted that Harbor fully cooperated with the police when arrested, that she gave police complete statements about the crimes, that she promptly accepted responsibility, and that she pled guilty at an early opportunity.

¶ 17. In determining the sentence, the court filled out a sentencing worksheet. The worksheet indicates that the court considered some factors to be aggravating and others mitigating. The court considered Harbor's criminal record and the characteristics of the offenses to be among the aggravating factors. It considered other factors, including Harbor's attitude and her mental health problems to be mitigating.[6]

---

[5] It was explained that Harbor was taking Effexor, Depacote, and Seraquil. The court inquired whether any of the medications affected her ability to understand or appreciate what was happening in court, and Harbor responded that she understood and that the medications were not affecting her decisionmaking in the case.

[6] Of note, the court checked a box indicating that it considered factors related to "alcohol and drug abuse" to be mitigating.

¶ 18. The court acknowledged that Harbor's mental health was a mitigating factor. However, it concluded that her psychological issues could be controlled through medication and that Harbor was responsible for her failure to do so:

> Now, I grant you, you may have some issues with your mental health. But you know, when you have issues with mental health, most of these things, including your type of manic-depressive disorder or whatever it is, it's very much controllable by medications . . . . And I'm not talking as if I'm Dr. Moroney because I'm not. But I do know that it's controllable. And then you go ahead and you lead a productive socially oriented and appropriate lifestyle.
>
> For whatever reason, you have not done that. And I can't tell you why. I don't know if you've gone off your medications and you tried to control your situation with other controlled substances which then do nothing more than exacerbate or worsen the situation. . . . You've got a very precarious chemical makeup in your body, more so than most people because of this disorder. . . .
>
> And what that means is there's very little tolerance that you have that when you go out of whack that you can stay within that appropriate level to be able to function in a law-abiding and reasonable way. . . . You better understand that. You better start functioning within your limitations and then hopefully follow the treatment regimens that are going to be given to you, because if you don't, we're not going to be tolerating this type of behavior . . . .

---

It is not clear from the worksheet whether the court was aware of Harbor's addiction to cocaine and considered it to be a mitigating factor, or whether the court considered the lack of evidence of any drug use to be a mitigating factor. There was no evidence related to drug and alcohol abuse introduced at the sentencing hearing.

¶ 19.  The court considered Harbor's failure to abide by the law after having been convicted of similar crimes in her youth to be an aggravating factor that made her a risk to the public:

> The fact of the matter is that you've returned to your days of being a foolish youth . . . . [W]hen you are 34 years of age and you've had the multiple experiences in life that you've had . . . you should have learned some things . . . . You could have learned obviously you never wanted to go back to prison. . . .

> But unfortunately, when it gets down to going back into a life of criminal activity such as you did here, similar to what you did as a youth, it raises a lot of fears for the Court. Why? Because my job is to protect society. Sure it's to rehabilitate you too to the extent possible. But if the experiences of life, both the good and the bad, haven't given you some insight as to what's the appropriate thing to do or how to do it, you know, then I have a real protection of society issue for the court to deal with[.]

¶ 20.  The court explained to Harbor that its responsibility was "to protect society first off" and also to "punish you sufficiently so you're deterred from ever thinking about doing something as foolish as this again." It factored Harbor's "willingness or ability to follow the rules of law" and her history of revoked probations into its consideration of her character and rehabilitative needs:

> [W]e don't want to be playing, you know, tag with you as far as bringing you in and out of prison or the like. We want you to do your time . . . and then come out and hopefully adjust your life so then you start being reintroduced back into society and you start getting it again and you start doing the right thing.

¶ 21. Ultimately, the court concluded that overall the facts were "aggravated but medium risk only." He explained, "I believe you have the basic intellectual capacity to do better which makes me not want to throw away the key. But you're going to be under supervision for a long time. You need it." On the sentencing worksheet, a sentence in the aggravated medium risk range called for 8–15 years of confinement. The court imposed three consecutive sentences totaling 24 years, consisting of 12 years of confinement and 12 years of extended supervision.[7]

¶ 22. Harbor was appointed postconviction counsel. Her new attorney requested an evaluation from Cedar Creek Family Counseling, Inc. (the Cedar Creek Report). In compiling the Report, a social worker relied on interviews with Harbor and her mother, mental health records from Taycheedah Correctional Institution, and discovery material provided by the defense.

¶ 23. The Cedar Creek Report, which is discussed more thoroughly below, detailed Harbor's severe depression and other mental health issues; her on-and-off

---

[7] Specifically, the court sentenced Harbor to ten years, five incarceration and five on extended supervision for armed robbery. It sentenced Harbor to eight years, four incarceration and four on extended supervision, for attempted armed robbery. Finally, it sentenced her to six years, three incarceration and three on extended supervision, for attempted robbery. The court ordered that the sentences be served consecutively with each other and also with the sentence she was currently serving.

As conditions of extended supervision on all three counts, the court ordered Harbor to have a mental health evaluation and AODA assessment and to follow whatever treatment is necessary. It ordered cognitive intervention counseling and parenting counseling. Among other conditions, the court ordered Harbor to refrain from consuming controlled substances and alcohol.

dependency on cocaine; and traumatic issues from Harbor's childhood. The report concluded: "It appears quite likely that Ms. Harbor's mental heath issues and severe drug dependency problems are at the core of her criminal behavior."

¶ 24. Relying on the information from the Cedar Creek Report, Harbor's postconviction counsel filed a motion posing two issues: (1) whether the report prepared by Cedar Creek, which presents previously unknown information about Harbor's mental health status, her addiction issues, and her traumatic upbringing, constitutes a new factor justifying modification of her sentence; and (2) whether Harbor was denied the assistance of counsel when her sentencing attorney failed to investigate or present those mitigating factors.

¶ 25. Harbor argued that her sentence should be modified because of the new factors presented in the Cedar Creek Report. If the information in the Report had been presented to the sentencing court, she asserted, "the offense level would have been reduced from aggravated to intermediate." "Rather than locking Harbor up to punish her and protect society," she argued, the sentence "should be structured to help her deal with her mental health issues, her addiction issues, and her traumatic childhood. She is deserving of less punishment, and asks that her sentence be modified to reflect such."

¶ 26. In addition, Harbor argued that Attorney Parr had been ineffective for failing to investigate and present the facts uncovered in the Cedar Creek Report. With her motion, Harbor filed an affidavit making the following assertions: that she had informed Attorney Parr about her medications and mental health concerns, but that to her knowledge, he made no further

investigation; that Attorney Parr never asked her about any potential mitigating factors; and that "during the course of this case, from the filing of the criminal complaint until sentencing, I only spoke to Attorney Parr in the bullpen jail on the day I was scheduled to go to court, immediately before I went to court."

¶ 27. The circuit court denied Harbor's motion for postconviction relief in a written order without holding a hearing. Regarding Harbor's mental health issues, the court said: "The sentencing transcript reveals that the defendant's mental health issues were addressed, discussed and considered by this court at the time of sentencing. Although the information may not have been as extensive as a report would have detailed, the court was cognizant of the problems facing the defendant." It concluded that "[f]amiliarity with a more extensive analysis of the defendant's mental health problems would not have caused the court to impose a lesser sentence in this case."

¶ 28. The court then turned to address Harbor's addiction to cocaine and history of drug use. It acknowledged that "a drug addiction was never mentioned at the time of sentencing to account for the defendant's behavior[.]" Nevertheless, it determined that "even if the court had been aware of it, a lesser sentence would not have been imposed." According to the Cedar Creek Report, the court explained, Harbor continually returned to drug use after receiving treatment. The court concluded that "[t]his repeated behavior which she demonstrated over the years would have been a major aggravating factor in the sentence she received" because her "recurring drug usage would cause her to continue to be a substantial risk to society."

¶ 29. Finally, in addressing her traumatic upbringing, the court found "no connection between the

69

defendant's state of mind when she was twelve and the offenses she committed when she was 35." It concluded that "[t]his circumstance would not have altered the court's sentence."

¶ 30. The court then turned to Harbor's ineffective assistance of counsel claim. Because it determined that it would not have sentenced Harbor any differently had the information in the Report been presented during sentencing, the court concluded that Harbor's case had not been prejudiced by the absence of a presentence report.

¶ 31. In an unpublished per curiam opinion, the court of appeals affirmed. Quoting *State v. Michels,* 150 Wis. 2d 94, 99, 441 N.W.2d 278 (Ct. App. 1989), the court asserted that a new factor is "an event or development that frustrates the purpose of the original sentence." *State v. Harbor,* 2009AP1252–CR, unpublished slip op., ¶ 2 (Wis. Ct. App., Mar. 30, 2010). It concluded that the information presented by Harbor did not bear on the circuit court's primary concern in imposing sentence, public safety, and was therefore not a new factor:

> The circuit court's major focus at sentencing was the need to protect the public. The information in the Cedar Creek Counseling sentencing report sheds light on the difficulties Harbor has faced in the past and currently faces, but does not address the circuit court's overriding concern in framing its sentence—the need to protect the public. Since the information in the report does not bear on the circuit court's primary concern in imposing sentence, it is not "highly relevant to the imposition of the original sentence," and thus is not a new factor.

*Id.,* ¶ 3.

¶ 32.   The court of appeals also determined that Harbor's ineffective assistance of counsel claim was unavailing because she could not show that she had been prejudiced by her counsel's claimed ineffectiveness: "[T]he mitigating information would not have undercut the circuit court's primary concern—that Harbor is currently a danger to the public." *Id.*, ¶ 5.

## II

¶ 33.   We are asked to determine whether Harbor's motion presents a new factor justifying sentence modification. Whether a fact or set of facts presented by the defendant constitutes a "new factor" is a question of law. *State v. Hegwood,* 113 Wis. 2d 544, 547, 335 N.W.2d 399 (1983). We review questions of law independently of the determinations rendered by the circuit court and the court of appeals. *Id.* The determination of whether that new factor justifies sentence modification is committed to the discretion of the circuit court, and we review such decisions for erroneous exercise of discretion. *Id.* at 546.

¶ 34.   We are also asked to determine whether Harbor received ineffective assistance of counsel at sentencing. Our review of a claim of ineffective assistance of counsel is a mixed question of fact and law. *State v. Maloney,* 2005 WI 74, ¶ 15, 281 Wis. 2d 595, 698 N.W.2d 583. We will not disturb the circuit court's findings of fact unless they are clearly erroneous, but the ultimate determinations of whether an attorney's performance fell below constitutional standards and whether the defendant was prejudiced as a result are questions of law. *Id.*

¶ 35.   Within certain constraints, Wisconsin circuit courts have inherent authority to modify criminal sentences. *Hegwood,* 113 Wis. 2d at 546. A court cannot base a sentence modification on reflection and second thoughts alone. *State v. Wuensch,* 69 Wis. 2d 467, 474, 480, 230 N.W.2d 665 (1975). However, it may base a sentence modification upon the defendant's showing of a "new factor."[8] *Hegwood,* 113 Wis. 2d at 546.

¶ 36.   Deciding a motion for sentence modification based on a new factor is a two-step inquiry. The defendant has the burden to demonstrate by clear and convincing evidence the existence of a new factor. *State v. Franklin,* 148 Wis. 2d 1, 8–9, 434 N.W.2d 609 (1989). Whether the fact or set of facts put forth by the defendant constitutes a "new factor" is a question of law. *Hegwood,* 113 Wis. 2d at 547. The requirement that the defendant demonstrate the existence of a new factor prevents a court from modifying a sentence based on second thoughts and reflection alone.

---

[8] Under other circumstances, a circuit court has authority to modify a sentence even though no new factor is presented, such as when the court determines that the sentence is illegal or void, *State v. Crochiere,* 2004 WI 78, ¶ 12, 273 Wis. 2d 57, 681 N.W.2d 524, or when the court determines that the sentence is unduly harsh or unconscionable, *id.; State v. Wuensch,* 69 Wis. 2d 467, 230 N.W.2d 665 (1975); *State v. Ralph,* 156 Wis. 2d 433, 438, 456 N.W.2d 657 (Ct. App. 1990). A court also has authority to vacate a sentence and resentence the defendant if the court relied on inaccurate information when originally sentencing the defendant. *State v. Tiepelman,* 2006 WI 66, 291 Wis. 2d 179, 717 N.W.2d 1.

¶ 37. The existence of a new factor does not automatically entitle the defendant to sentence modification. *Hegwood,* 113 Wis. 2d at 546; *State v. Verstoppen,* 185 Wis. 2d 728, 740–42, 519 N.W.2d 653 (Ct. App. 1994). Rather, if a new factor is present, the circuit court determines whether that new factor justifies modification of the sentence. *Franklin,* 148 Wis. 2d at 8. In making that determination, the circuit court exercises its discretion. *Hegwood,* 113 Wis. 2d at 546; *Franklin,* 148 Wis. 2d at 8; *State v. Paske,* 163 Wis. 2d 52, 60, 471 N.W.2d 55 (1991).

¶ 38. Thus, to prevail, the defendant must demonstrate both the existence of a new factor and that the new factor justifies modification of the sentence. *State v. Crochiere,* 2004 WI 78, ¶ 24, 273 Wis. 2d 57, 681 N.W.2d 524. Accordingly, if a court determines that the facts do not constitute a new factor as a matter of law, "it need go no further in its analysis" to decide the defendant's motion. *Id.* That is, it need not determine whether, in the exercise of its discretion, the sentence should be modified. *Id.* Alternatively, if the court determines that in the exercise of its discretion, the alleged new factor would not justify sentence modification, the court need not determine whether the facts asserted by the defendant constitute a new factor as a matter of law. *Id.*

¶ 39. Due to inconsistencies in our case law, we begin by clarifying the definition of a "new factor" in the context of a motion for sentence modification. We then address the defendant's arguments and determine whether the circuit court properly denied Harbor's request for sentence modification.

¶ 40. The definition of a "new factor" is set forth in *Rosado v. State,* 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975) as follows: "a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties."

¶ 41. This definition from *Rosado* is one of long-standing. Nevertheless, in *State v. Michels,* 150 Wis. 2d 94, 441 N.W.2d 278 (Ct. App. 1989), the court of appeals appeared to modify the *Rosado* new factor test by adding an additional requirement. Citing *Hegwood, Krueger,* and *Sepulveda,*[9] the *Michels* court concluded that "the case law since *Rosado* has limited the 'new factor' standard to situations where the new factor frustrates the purpose of the original sentencing." 150 Wis. 2d at 97.

¶ 42. It should be noted that the *Michels* court's modification of the *Rosado* definition found no support in the existing law at the time. Neither *Hegwood* nor *Krueger* use the phrase "frustrate the purpose" when discussing sentence modification based on a new factor. These cases do not support the *Michels* court's assertion that "a new factor [must] frustrate[] the purpose of the original sentencing."

¶ 43. Furthermore, although *State v. Sepulveda* does address frustration of purpose in its discussion,

---

[9] *State v. Hegwood,* 113 Wis. 2d 544, 335 N.W.2d 399 (1983); *State v. Krueger,* 119 Wis. 2d 327, 351 N.W.2d 738 (Ct. App. 1984); *State v. Sepulveda,* 119 Wis. 2d 546, 350 N.W.2d 96 (1984).

119 Wis. 2d 546, 557, 350 N.W.2d 96 (1984), the issue before the *Sepulveda* court did not involve the circuit court's inherent authority to modify a sentence based on a new factor. Rather, the issue was whether the circuit court exceeded its statutory authority to modify probation under Wis. Stat. § 973.09(3)(a) by increasing the defendant's punishment and effectively revoking probation.

¶ 44.   In *Sepulveda,* the circuit court had imposed a stayed prison sentence and conditioned probation upon the defendant voluntarily admitting himself to the Mendota Mental Health Institute. *Id.* at 549. The court later learned that this condition could not be met because the defendant was denied admission. *Id.* Upon a motion by the State, the court "modif[ied] the defendant's probation from institutionalization at a mental hospital to incarceration in a state prison." *Id.* at 551.

¶ 45.   The defendant argued that the circuit court was without the authority under Wis. Stat. § 973.09(3)(a) to effectively revoke probation because doing so would impermissibly infringe upon the authority of the department of health and social services. *Id.* at 553. Ultimately, the *Sepulveda* court held that a circuit court had the authority to modify the terms of probation as it had, but that authority "should only be utilized by the courts in cases . . . where the judge's intent behind the grant of probation is completely frustrated due to the failure of a primary condition" of probation. *Id.* at 557.

¶ 46.   The *Michels* court appended this limitation on a circuit court's statutory authority to modify probation to the definition of new factor set forth in *Rosado.* Yet, Wisconsin courts have not consistently embraced the *Michels* court's addendum to the *Rosado* definition. As a result, there are now two divergent lines of cases in our state jurisprudence.

¶ 47.    One line of cases simply sets forth *Rosado*'s definition of a "new factor."[10] The other line of cases cites the *Rosado* definition of "new factor" but then sets forth frustration of the purpose of the original sentencing as an additional requirement.[11] This second line of cases could be read to hold that a fact asserted by the defendant is not a new factor unless the *Rosado* test is satisfied *and* the fact *also* frustrates the purpose of the original sentence. *See, e.g., State v. Delaney,* 2006 WI App 37, ¶ 8, 289 Wis. 2d 714, 712 N.W.2d 368 ("The effect of the 'new factor' must frustrate the purpose of the original sentencing.").

¶ 48.    We take this opportunity to clarify the law. We conclude that frustration of the purpose of the original sentence is not an independent requirement

---

[10] *State v. Lechner,* 217 Wis. 2d 392, 423–24, 576 N.W.2d 912 (1998); *State v. Smet,* 186 Wis. 2d 24, 27, 519 N.W.2d 697 (1994); *State v. Kluck,* 210 Wis. 2d 1, 7, 563 N.W.2d 468 (1997); *State v. Crockett,* 2001 WI App 235, ¶ 13, 248 Wis. 2d 120, 635 N.W.2d 673; *State v. Nickel,* 2010 WI App 161, ¶ 8, 330 Wis. 2d 750, 754 N.W.2d 765; *Ralph,* 156 Wis. 2d at 436; *Franklin,* 148 Wis. 2d at 8; *Cresci v. State,* 89 Wis. 2d 495, 503, 278 N.W.2d 850 (1979); *State v. Macemon,* 113 Wis. 2d 662, 668, 335 N.W.2d 402 (1983); *Krueger,* 119 Wis. 2d at 333; *Sepulveda,* 119 Wis. 2d at 550 n.1.

[11] *See, e.g., State v. Johnson,* 158 Wis. 2d 458, 466, 463 N.W.2d 352 (Ct. App. 1990); *State v. Champion,* 2002 WI App 267, ¶ 4, 258 Wis. 2d 781, 654 N.W.2d 242; *State v. Crochiere,* 2004 WI 78, ¶ 12, 273 Wis. 2d 57, 681 N.W.2d 524; *State v. Trujillo,* 2005 WI 45, ¶ 13, 279 Wis. 2d 712, 694 N.W.2d 933; *State v. Delaney,* 2006 WI App 37, 289 Wis. 2d 714, 712 N.W.2d 368; *State v. Schladweiler,* 2009 WI App 177, ¶ 7, 322 Wis. 2d 642, 777 N.W.2d 114; *see also State v. Carter,* 208 Wis. 2d 142, 146, 560 N.W.2d 256 (1997) ("[t]he purpose of sentence modification is to allow a court to correct a sentence when new factors frustrate the purpose of the sentencing court").

when determining whether a fact or set of facts alleged by a defendant constitutes a new factor.

¶ 49. The purposes underlying a sentence "include, but are not limited to, the protection of the community, punishment of the defendant, rehabilitation of the defendant, and deterrence to others." *State v. Gallion,* 2004 WI 42, ¶ 40, 270 Wis. 2d 535, 678 N.W.2d 197. Certainly, a fact that frustrates the purpose of the original sentence likely satisfies the *Rosado* test, provided that the fact was also unknown to the circuit court at the time of the sentencing. Any fact that frustrates the purpose of the original sentence would generally be a new fact that is "highly relevant to the imposition of sentence."

¶ 50. Yet, the converse may not always be true. A circuit court might conclude that its entire approach to sentencing would have been different had it been aware of a fact that is "highly relevant to the imposition of sentence." Even so, the court may not be able to conclude that the new fact, which would have changed its entire approach to sentencing, necessarily frustrates the purpose of the original sentence it imposed.

¶ 51. The requirements for sentence modification are meant to "promote[] the policy of finality of judgments [while at the same time] satisf[ying] the purpose of sentence modification, which is the correction of unjust sentences." *Franklin,* 148 Wis. 2d at 9. During oral argument, the State appeared to concede that strictly applying the *Michels* language would unduly constrain the circuit court's exercise of discretion in correcting unjust sentences:

> I do not know that I would want to argue that in the exercise of its discretion the court could not say well, this does not really frustrate what I was doing. However, with this new information that I did not have at sentencing, I would have had the same purpose but I might have changed the sentence slightly. I would not say that a court could not do that since this is a discretionary standard.

Requiring the court to conclude that the purpose of the original sentencing was frustrated would undercut the purpose underlying sentence modification, which is to allow a circuit court discretion to modify sentences in an appropriate case.

¶ 52. Accordingly, we conclude that the definition set forth in *Rosado* is the correct definition of a "new factor" for purposes of sentence modification. We withdraw any language from *Michels* and the cases following *Michels* that suggests an additional requirement that an alleged new factor must also frustrate the purpose of the original sentence.

B

¶ 53. Harbor asserts that there are three categories of new factors that justify modification of her sentence: her mental health, her addiction issues, and her traumatic childhood. We address each category in turn.

¶ 54. The Cedar Creek Report provided a detailed narrative of Harbor's struggles with mental health issues. According to the Report, Harbor was first prescribed antidepressants when she was incarcerated at Taycheedah, and she has taken antidepressants on and off for years. Sometime around 2001, when she became pregnant with her only child, Harbor fell into a deep state of depression that was ultimately stabilized

through medication. When she was living in the community, however, she often neglected to take her medication.

¶ 55. Shortly after her release from Taycheedah in 2007, Harbor attempted suicide. She was admitted to a mental health complex and diagnosed with bipolar disorder. She reported difficulty taking the medication that was prescribed for the disorder because it gave her nightmares.

¶ 56. The Report concludes that Harbor is most successful when she is engaged in full-time employment and intensive alcohol, drug, and mental health therapy. During her current incarceration, Harbor has attended individual and group therapy sessions and is adhering to her medication regimen.

¶ 57. A new factor is one that was "not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties." *Rosado,* 70 Wis. 2d at 288. Therefore, any fact that was known to the court at the time of sentencing does not constitute a new factor. *See State v. Ralph*, 156 Wis. 2d 433, 456 N.W.2d 657 (Ct. App. 1990) (concluding that the fact that Ralph's accomplice received a lesser sentence than Ralph was not a new factor because the circuit court judge had been informed at the time of Ralph's sentencing that a lesser sentence had been recommended for the accomplice); *State v. Krueger,* 119 Wis. 2d 327, 335, 351 N.W.2d 738 (Ct. App. 1984) (concluding that there was no new factor because "the so-called 'new factor' was, in fact, known to the trial judge at the time of sentencing).

¶ 58. Like the circuit court, we observe that Harbor's "mental health issues were addressed, dis-

cussed and considered" during sentencing and that "the court was cognizant of the problems facing the defendant." The court was informed that Harbor had been diagnosed with bipolar disorder and severe depression, that she had been hospitalized for mental health issues, and that she had been prescribed medication to control her symptoms. We conclude as a matter of law that the facts related to Harbor's mental health do not constitute a new factor.[12]

¶ 59.   We turn next to the facts in the Cedar Creek Report that relate to Harbor's use of and addiction to cocaine and other substances. The Report explains that Harbor began drinking alcohol when she was 15 years old, that she started smoking marijuana when she was 16 years old, and she first tried cocaine after graduating from high school. Harbor believes that she became addicted to cocaine within two months of trying it for the first time.

¶ 60.   In 1992 and 1993, Harbor committed robberies to get money to buy drugs. Ultimately, she was sentenced to seven years incarceration and eight years of probation. While incarcerated, Harbor participated in alcohol and drug treatment. Upon her release, she initially stayed clean. After a couple of months, how-

---

[12] We note that the circuit court relied on *State v. Michels*, 150 Wis. 2d 94, 99, 441 N.W.2d 278 (Ct. App. 1989) in determining that Harbor's mental health was not a new factor. Quoting *Michels*, the court said that "[t]he purpose of the sentence is not frustrated by additional and more expansive knowledge of the defendant's mental health issues in this case." Although we have stated that this language from *Michels* does not set forth an additional requirement for a new factor, we agree with the circuit court's ultimate determination that Harbor's mental health is not a new factor.

ever, she started using cocaine again and ultimately returned to daily use. As a result, her probation was revoked.

¶ 61. The same pattern of behavior was repeated several times before Harbor was arrested for the current offenses. Harbor would quit using cocaine during her incarceration, and upon release, she would initially stay clean. However, she would ultimately fall into her old habits and start using cocaine again, leading to the revocation of her probation.

¶ 62. The circuit court did not expressly determine whether Harbor's history of addiction to cocaine constituted a new factor. Rather, in exercising its discretion, the court concluded that had it known about Harbor's "recurring drug use," "a lesser sentence would not have been imposed." The court determined that "[t]his repeated behavior which she demonstrated over the years would have been a major aggravating factor in the sentence she received" because her "recurring drug usage would cause her to continue to be a substantial risk to society."

¶ 63. We conclude that the circuit court did not erroneously exercise its discretion. It made no error of law, and it explained its reason for concluding that the facts Harbor presented did not justify modification of her sentence.

¶ 64. Finally, we turn to the facts in the Cedar Creek Report that relate to Harbor's childhood. According to the Report, Harbor's mother was only 15 years old when she became pregnant, and Harbor's father was not involved in her life. When Harbor was young, her mother drank and used cocaine. Her mother's abusive boyfriend raped Harbor on two occasions. Ultimately, when Harbor was 14 years old, Harbor's mother left her boyfriend, and later, she quit abusing drugs and alcohol.

¶ 65. Again, the circuit court did not expressly determine whether the facts about Harbor's childhood constituted a new factor. Rather, in exercising its discretion, the court indicated that it did not find the facts to be mitigating. It explained that it found "no connection between the defendant's state of mind when she was twelve and the offenses she committed when she was 35." This conclusion does not demonstrate an erroneous exercise of discretion.

¶ 66. We conclude that Harbor has not presented any new factor that justifies modification of her sentence. The facts related to Harbor's mental health do not constitute a new factor because Harbor's mental health issues were known to the circuit court and taken into consideration at the time the court imposed sentence. Further, the circuit court appropriately exercised its discretion when it concluded that facts related to Harbor's addiction issues and her traumatic upbringing did not justify sentence modification.

IV

¶ 67. We examine next Harbor's claim of ineffective assistance of counsel and evaluate it under the analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, a defendant must demonstrate that (1) counsel's performance was deficient, and (2) the deficiency was prejudicial. *Id.* at 687. We need not address both components of the inquiry if the defendant fails to make an adequate showing on one. *Id.* at 697.

¶ 68. In all cases, and especially in a case involving a maximum sentence of almost 70 years, it behooves an attorney to investigate possible mitigating factors

and to bring them to the attention of the court. Doing so may involve requesting the court to order a PSI, commissioning a sentencing memorandum, or defense attorneys conducting their own investigation.

¶ 69.  We have commented that, given the abolition of parole boards which had served as a check on a sentencing court's exercise of discretion, "judges have an enhanced need for more complete information upfront, at the time of sentencing." *Gallion,* 270 Wis. 2d 535, ¶¶ 33–34. It is better for a judge to arrive at "a conclusion that is based on more complete and accurate information and reached by an organized framework for the exercise of discretion." *Id.,* ¶ 36.

¶ 70.  We agree with Harbor that an attorney's failure to investigate possible mitigating factors and present them at sentencing may, in some cases, constitute deficient performance.[13] *See State v. Pote,* 2003 WI App 31, ¶ 34, 260 Wis. 2d 426, 659 N.W.2d 82; *Wiggins v. Smith,* 539 U.S. 510 (2003). In this case, however, we do not decide whether Attorney Parr's performance was deficient.

¶ 71.  An attorney's performance should be judged based on the facts of the particular case as they existed at the time. *Strickland,* 466 U.S. at 690. Here, the circuit court did not make any findings of fact regarding Attorney Parr's performance. As a result of its determination about prejudice, the circuit court did not conduct a *Machner* hearing and we do not have the benefit of testimony from Attorney Parr about any investigation

---

[13] In other cases, an attorney might persuasively argue that the failure to bring potentially aggravating circumstances to the court's attention was a sound strategic decision.

83

he may have undertaken and any strategic decisions he may have made.[14]

██ ██

¶ 72.   Like the circuit court and the court of appeals, we focus our analysis on whether Harbor was prejudiced by Attorney Parr's alleged deficiency. To prove prejudice, Harbor must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

¶ 73.   Harbor argues that "with the mitigating factors, the sentencing guidelines would change" because Harbor would be seen "not as a clever, greedy sociopath, but a person struggling with past demons, resulting in addictions and mental health issues, for which rehabilitation or treatment, not punishment, is necessary." She

---

[14] Under *State v. Machner,* 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979), a hearing may be held when a criminal defendant's attorney is challenged for allegedly providing ineffective assistance. At the hearing, the defendant's attorney testifies as to his or her reasoning on the challenged action or inaction, and that testimony provides a basis for the court's determination of whether the attorney's actions were the result of deliberate trial strategy or deficient performance. *Id.* at 804.

We note that Wisconsin courts appear to use the terms "strategic" and "tactical" interchangeably. *See, e.g., State v. Felton,* 110 Wis. 2d 485, 502, 329 N.W.2d 161 (1983) ("The prudent-lawyer standard requires that strategic or tactical decisions must be based upon rationality founded on the facts and the law. If tactical or strategic decisions are made on such a basis, this court will not find that those decisions constitute ineffective assistance of counsel . . . ."). We do not perceive any substantive difference between these terms in the context of an ineffective assistance of counsel claim.

asserts that with this knowledge, the court would have placed her "in the Medium/Intermediate category, with a suggested confinement of 5–10 years."

¶ 74.  Harbor's argument regarding prejudice fails to account for the fact that the circuit court did not consider the information presented in the Cedar Creek Report to be mitigating. Rather, the Court considered many of the facts to be aggravating and others to be irrelevant.

██

¶ 75.  Although the Report paints a more complete picture of Harbor and contains some sympathetic facts, the information presented demonstrates that Harbor struggled to abstain from using cocaine while on probation and that she repeatedly relapsed into cocaine use when she was living in the community. The circuit court focused on Harbor's demonstrated difficulty to stay sober even when under supervision by the department of corrections. It emphasized that safety of the public was of paramount importance here and concluded that the new factors asserted by Harbor would not have made any difference in its sentencing decision. Accordingly, we determine that Harbor has failed to demonstrate that her attorney's alleged shortcomings were prejudicial.

¶ 76.  In sum, we conclude that Harbor has not presented any new factor that justifies modification of her sentence. The facts related to Harbor's mental health do not constitute a new factor because Harbor's mental health issues were known to the circuit court and taken into consideration at the time the court imposed sentence. Further, the circuit court appropriately exercised its discretion when it concluded that facts related to Harbor's addiction issues and her traumatic upbringing did not justify sentence modification.

¶ 77. We further determine that Harbor has not demonstrated that she received ineffective assistance of counsel because she has not shown that her attorney's alleged shortcomings were prejudicial. She has failed to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.