PER CURIAM.
¶1 Jerry R. Hubbard appeals a judgment of conviction entered after he pled guilty to first-degree reckless homicide and first-degree recklessly endangering safety by use of a dangerous weapon. He also appeals a circuit court order denying modification of the thirty-year term of initial confinement imposed for the homicide. He contends that sentence modification is warranted based on an alleged new factor, namely, a report by a defense expert regarding the cause of the homicide victim's death. Further, he claims that he is entitled to sentencing relief because his trial counsel was ineffective at sentencing for failing to present the expert's report. The circuit court rejected his claims, and we affirm.
BACKGROUND
¶2 The State charged Hubbard with first-degree intentional homicide and first-degree recklessly endangering safety by use of a dangerous weapon. Hubbard's first attorney withdrew after several months. Successor counsel was appointed, and Hubbard thereafter negotiated a plea bargain in which the State reduced the charge of first-degree intentional homicide to first-degree reckless homicide. At the plea hearing, Hubbard agreed that the circuit court could rely on the facts stated in the criminal complaint as a factual basis for his guilty pleas to the amended charge and to the charge of first-degree recklessly endangering safety by use of a dangerous weapon.
¶3 According to the criminal complaint, police responded to a complaint of a domestic disturbance at a Wauwatosa, Wisconsin, apartment building. Officers identified apartment No. 359 as the scene of the disturbance and pounded on the door but received no reply. Enjanae Perkins, a neighbor in the unit directly below apartment No. 359, alerted police that she thought she saw someone jumping off the balcony, and one of the officers spotted a man, subsequently identified as Hubbard, running from the building. Officers tackled Hubbard, who stabbed one of the officers during the ensuing struggle.
¶4 Police then discovered the body of Lauren Johnson lying on a lower level patio underneath the balcony attached to apartment No. 359. Perkins advised the officers that she saw the body fall from the balcony after the police had arrived on the scene.
¶5 The complaint went on to state that Dr. Emily Hansen and Dr. Brian Peterson of the Milwaukee County Medical Examiner's Office conducted an autopsy on Johnson. The autopsy revealed that Johnson had petechial hemorrhaging (i.e., bleeding in the eyes) and other injuries leading to the conclusion that "the cause of death was suffocation." Further, Johnson "did not have significant neck muscle damage, indicating that strangulation was not a significant factor." The doctors determined that an injury to Johnson's head and a laceration to her liver occurred after death.
¶6 Following Hubbard's guilty pleas, the circuit court ordered a presentence investigation. The investigator interviewed Hubbard, who acknowledged causing Johnson's death. Hubbard told the investigator that Johnson threatened him with a knife when he told her that he was ending their relationship, and he restrained her "until she calmed down.... At this point, her head was against [Hubbard's] arm. She stopped struggling and went limp," and he realized that she was no longer breathing. Hubbard said that when he heard police at the door, he attempted to lower Johnson to the ground from the balcony, but she slipped from his grasp and fell. He went on to tell the investigator that he was not sure of the cause of Johnson's death, but his attorney told him that the cause was the fall from the balcony.
¶7 At sentencing, the State said that if the case had proceeded to trial, Peterson would have testified that the cause of Johnson's death was deprivation of oxygen (asphyxiation ) due to smothering, not strangulation and not the fall from the balcony. According to the State, Peterson would further have testified that death by asphyxiation takes several minutes and that the injuries to Johnson's lips indicated Johnson probably struggled and fought for air during that time.
¶8 Hubbard's defense counsel responded to these remarks, stating that predecessor counsel had "done some good work" regarding the "manner and the cause of [Johnson's] death." Counsel went on to explain that the defense had at one time pursued a theory "that maybe the cause of death was striking the concrete below, not the smothering.... [T]hat was just a matter of initial discussions as to where the case might go."
¶9 After hearing from the State and the defense, the circuit court noted that asphyxiation"took two to three minutes," and the circuit court called for two minutes of silence in the courtroom to "see how long that young lady suffered with whatever instrument of death you delivered.... Because this was no accident." The circuit court then told Hubbard that the primary sentencing goal was punishment for taking the life of another person and that the secondary goal was deterrence. The circuit court explained that, notwithstanding Hubbard's education, military background, and lack of criminal history, he must "be accountable for what [he] did." In light of the sentencing goals, the circuit court imposed thirty years of initial confinement and fifteen years of extended supervision for the homicide conviction and a consecutive sentence of seven years of initial confinement and four years of extended supervision for recklessly endangering the safety of an arresting officer.
¶10 Hubbard filed a postconviction motion, seeking modification of the homicide sentence on the primary basis that an alleged new factor relating to the cause of Johnson's death warranted relief. In support, he relied on a report prepared by a forensic pathologist retained on his behalf by his first trial attorney. The pathologist, Dr. Jeffrey Jentzen, opined in the report that "[t]he injuries to [Johnson's] neck do not support a typical manual or ligature type of strangulation. All of the injuries ... are the result of blunt force trauma from [a] fall." Jentzen further opined that "[t]he extensive blood from the head wound confirms that [Johnson] was still alive when she sustained the injuries from the fall." Jentzen concluded: "the death is best certified as head and neck injuries due to blunt force trauma due to a fall from a height."
¶11 In addition to alleging the existence of a new factor, Hubbard also sought sentencing relief on the ground that his trial counsel was ineffective at sentencing. In support, he again pointed to Jentzen's report and asserted that trial counsel should have presented that report as a mitigating factor. Emphasizing the two minutes of silence that the circuit court imposed during sentencing in recognition of Johnson's suffering, Hubbard claimed that "it was the nature of the incident and the cause of death that was the driving force in the sentenc[ing]," and that any evidence refuting the Milwaukee County medical examiner's conclusion that Johnson died from asphyxiation"would have been helpful."
¶12 The circuit court rejected both of Hubbard's claims for relief. The circuit court first concluded that Jentzen's report was not a new factor, and that, even assuming the report was new, the report did not "paint [Hubbard] in any better light" and therefore did not warrant a sentence modification. The circuit court further concluded that, because the report would not have benefitted Hubbard, he was not prejudiced when his trial counsel failed to present the report at sentencing. Hubbard appeals.
DISCUSSION
¶13 A circuit court has inherent authority to modify a defendant's sentence upon a showing of a new factor. State v. Harbor , 2011 WI 28, ¶35, 333 Wis. 2d 53, 797 N.W.2d 828. To prevail, the defendant must satisfy a two-prong test. First, the defendant must demonstrate by clear and convincing evidence that a new factor exists. See id. , ¶36. Second, the defendant must show that the new factor justifies sentence modification. See id. , ¶¶37-38. If a defendant fails to satisfy one prong of the test, a court need not address the other. See id. , ¶38.
¶14 A new factor is " 'a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because ... it was unknowingly overlooked by all of the parties.' " Id. , ¶40 (citation omitted). Whether a fact or set of facts constitutes a new factor is a question of law that this court decides independently. See id., ¶33. Whether a new factor warrants sentence modification is a discretionary determination for the circuit court. See id.
¶15 Hubbard claims that a report prepared by a pathologist retained by his first trial attorney constitutes a new factor. He is wrong, for numerous reasons. First, Hubbard knew about the report well in advance of sentencing. At a scheduling conference six weeks before his guilty plea, his successor trial counsel advised on the record that "prior counsel had Dr. Jen[tz]en look at the autopsy-related materials, and he issued a report with an alternative opinion as to what caused the death." Because the record incontrovertibly shows that Hubbard was familiar with Jentzen's report before sentencing, the report cannot serve as a new factor warranting sentencing modification, even though the report was not explicitly described to the sentencing court. See State v. Crockett , 2001 WI App 235, ¶14, 248 Wis. 2d 120, 635 N.W.2d 673 (information overlooked by the circuit court but known to the defendant at the time of sentencing is not a new factor).
¶16 Second, Jentzen's report cannot serve as a new factor because, as the circuit court correctly explained, the report reflects at most a competing opinion about the cause of Johnson's death. "[A]n expert's opinion based on previously known or knowable facts" is not a new factor because such an opinion is "not a 'fact or set of facts' that [was] not in existence or unknowingly overlooked by the parties at the time of sentencing." See State v. Sobonya , 2015 WI App 86, ¶7, 365 Wis. 2d 559, 872 N.W.2d 134 (citation omitted).
¶17 Third, the report is not a new factor because Hubbard fails to show that the cause of Johnson's death was highly relevant to the circuit court's sentencing decision. A circuit court has an opportunity to explain its sentencing remarks in postconviction proceedings. See State v. Fuerst , 181 Wis. 2d 903, 915, 512 N.W.2d 243 (Ct. App. 1994). Here, the circuit court discussed Johnson's cause of death at sentencing, but the circuit court explained in its postconviction order that the discussion was "for the purpose of considering the victim's suffering while [Hubbard] restrained her before she stopped breathing. Whether the victim was still technically alive when the defendant dropped her from the balcony ... was not highly relevant to th[e] court for sentencing."
¶18 We generally defer to a circuit court's interpretation of that court's own rulings if the interpretation is reasonable. See Thorp v. Town of Lebanon , 225 Wis. 2d 672, 683, 593 N.W.2d 878 (Ct. App. 1999), aff'd , 2000 WI 60, 235 Wis. 2d 610, 612 N.W.2d 59. The circuit court's interpretation of its sentencing decision in this case is eminently reasonable. The record of the sentencing hearing clearly shows that the circuit court was deeply concerned with the extent that Johnson suffered before she died, not with "whatever instrument of death" Hubbard used to end her life.
¶19 Significantly, Jentzen's report does not show that the victim was spared the suffering that concerned the circuit court at sentencing. While the report says that Johnson's injuries did "not support a typical manual or ligature type of strangulation,"[1] the report fails to refute the medical examiner's conclusion-corroborated by Hubbard's statements to the presentence investigator-that Johnson was suffocated.[2] For all of the foregoing reasons, the report is not a new factor within the meaning of Harbor .
¶20 Further, assuming only for the sake of argument that the report constitutes a new factor, Hubbard fails to show that the circuit court erroneously exercised its discretion by declining to modify his homicide sentence in reliance on that report. Our standard of review is deferential. See Harbor , 333 Wis. 2d 53, ¶33. "[W]e will not disturb the exercise of the circuit court's sentencing discretion so long as 'it appears from the record that the court applied the proper legal standards to the facts before it, and through a process of reasoning, reached a result which a reasonable judge could reach.' " State v. Cummings , 2014 WI 88, ¶75, 357 Wis. 2d 1, 850 N.W.2d 915 (citation omitted).
¶21 Here, the circuit court concluded that Jentzen's report did not aid Hubbard. Noting that the police were on the scene when Johnson fell to the patio, the circuit court observed: "if the victim was still alive with police outside her apartment door, then the defendant rejected an opportunity to allow police to revive her in favor of a crude attempt to save his own skin." The circuit court viewed this scenario as a more aggravated set of facts than that described by the State, and the circuit court determined that, had Hubbard offered such a scenario at sentencing, he "would have received the same sentence, if not a lengthier sentence." The circuit court's conclusion reflects a reasonable exercise of discretion, and accordingly, we must uphold it. See State v. Prineas , 2009 WI App 28, ¶34, 316 Wis. 2d 414, 766 N.W.2d 206 ("[O]ur inquiry is whether discretion was exercised, not whether it could have been exercised differently.").
¶22 We turn to Hubbard's claim that his trial counsel was ineffective at sentencing by not presenting Jentzen's report. The claim must fail.
¶23 A defendant who alleges that trial counsel was ineffective must prove both that trial counsel's performance was deficient and that the deficiency prejudiced the defense. See Strickland v. Washington , 466 U.S. 668, 687 (1984). Whether counsel's performance was deficient and whether the deficiency was prejudicial are questions of law that we review de novo . State v. Johnson , 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990). To prove deficient performance, the defendant must show that counsel's actions or omissions were "outside the wide range of professionally competent assistance." See Strickland , 466 U.S. at 690. To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. If a defendant fails to satisfy one component of the analysis, the court need not consider the other. See id. at 697.
¶24 When we consider whether counsel's performance was deficient, our role "is to determine whether defense counsel's performance was objectively reasonable according to prevailing professional norms." State v. Kimbrough , 2001 WI App 138, ¶31, 246 Wis. 2d 648, 630 N.W.2d 752. Here, trial counsel was objectively reasonable in not proffering Jentzen's report at sentencing. As we have seen, the report does nothing to refute the conclusion that Hubbard suffocated Johnson, but the report does indicate that he callously prevented the police from rescuing her. As the circuit court explained, Jentzen's conclusions reflect that "it was not [Hubbard's] first reckless act-restraining his girlfriend until she fell limp and breathless-that actually killed her, but his second reckless act of dropping her limp body from the balcony onto the patio below." The wide range of professionally competent representation plainly embraces the decision not to present this theory of the case to the sentencing court.
¶25 Because we conclude that trial counsel's performance was not deficient, we need not consider the question of prejudice. See Strickland , 466 U.S. at 697. We do so, however, for the sake of completeness. Briefly stated, Hubbard fails to show that he was prejudiced by trial counsel's decision to forgo offering Jentzen's report at sentencing because the circuit court determined in postconviction proceedings that the information in the report would not have led to a more lenient sentence and instead suggested the basis for a harsher disposition. See State v. Giebel , 198 Wis. 2d 207, 219, 541 N.W.2d 815 (Ct. App. 1995) (concluding that defendant did not prove prejudice where the circuit court found it would have imposed the same sentence "even if trial counsel had performed at sentencing in the manner suggested by [defendant]").
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2015-16).

"Strangulation describes the process whereby an external force is applied to the neck that results in a depressed or completed loss of consciousness. The external force can be the use of the bare hands (manual), ligature (a cord-like object), and gravity (near-hanging)." J. Stephan Stapczynski, Strangulation Injuries , Emergency Med. Rep. (Aug. 1, 2010), http://www.ahcmedia.com/articles/19950-strangulation-injuries (last visited July 6, 2018).

"Suffocation describes the process that impedes or halts respiration. Suffocation subdivides into smothering, choking, and confined spaces/entrapment/vitiated atmosphere. Smothering occurs when there is mechanical obstruction of the flow of air from the environment into the mouth and/or nostrils." Id.