PER CURIAM.
¶1 Karl J. Landt appeals from a judgment convicting him as a party to the crime of forty-seven counts of capturing a nude image, charged across three cases, and from an order denying his postconviction motion for plea withdrawal and sentence modification.[1] For the reasons that follow, we affirm.
¶2 Landt was charged in three Kenosha County Circuit Court cases with 262 total counts of capturing nudity without consent, as a party to the crime. The charges arose from years of Landt directing his codefendant, Melissa Wenckebach, to place hidden cameras in women's locker rooms in order to capture images of women changing.
¶3 As part of a negotiated settlement, Landt agreed to plead guilty to forty-seven charges. The rest would be dismissed and read in. In its plea-taking colloquy, the circuit court went through all forty-seven counts with Landt, explaining that each was a Class I felony on which Landt could face "imprisonment not more than three years, six months." Several times, the court explained that for each bifurcated count, Landt faced a maximum of one and one-half years of initial confinement and two years of extended supervision. The court recited the forty-seven charges individually. For each count, the court informed Landt of the maximum penalty, ascertained that he "underst[ood] the crime, the punishment, and the elements," and asked, "What is your plea?" Forty-seven times, Landt answered, "Guilty." The court declined to revoke bond pending sentencing, though it acknowledged that Landt "is facing 47 times three-and-a-half years, 164 years incarceration."
¶4 The author of the presentence investigation report recommended that Landt receive five (5) consecutive bifurcated sentences totaling between ten (10) and seventeen and one-half (17 ½) years, with between five (5) and seven and one-half (7 ½) years of initial confinement. The State recommended forty-seven years of initial confinement followed by forty-seven years of extended supervision. Defense counsel asked that if the court saw fit to send Landt to prison, that it impose initial confinement more in line with the PSI author's recommendation. The sentencing court imposed an aggregate bifurcated sentence totaling seventy-three years, with twelve years of initial confinement followed by sixty-one years of extended supervision.
¶5 Landt filed a postconviction motion seeking plea withdrawal. He alleged that the circuit court did not inform him that it could impose consecutive sentences and that he did not understand the total maximum sentence he faced when entering his pleas. The circuit court held a hearing after which it ruled that Landt failed to set forth a prima facie case entitling him to an evidentiary hearing. The circuit court also denied Landt's alternative claim, that his codefendant's lesser sentence constituted a new factor entitling him to sentence modification.[2] Landt maintains that he is entitled to plea withdrawal or, in the alternative, sentence modification.
Landt is not entitled to withdraw his guilty pleas.
¶6 A defendant seeking plea withdrawal due to a defective colloquy must demonstrate that the circuit court failed to comply with WIS. STAT. § 971.08 or other mandatory procedures, and must allege that he or she did not know or understand the information that should have been provided. See State v. Bangert , 131 Wis. 2d 246, 274-75, 389 N.W.2d 12 (1986). Once the defendant has made this prima facie showing, the burden shifts to the State to demonstrate by clear and convincing evidence that despite the deficiency, the defendant otherwise knew or understood the missing information. Id .
¶7 The circuit court held a non-evidentiary hearing to decide whether Landt established a prima facie case under Bangert . In making his argument, Landt did not go so far as to assert that the plea-taking court has a mandatory duty to inform a defendant of the cumulative maximum in every case. Recognizing that this is not what the law requires, Landt argued that given the high number of charges to which he pled, "Bangert required a court to do more here than, perhaps, it would have in other circumstances with lesser charges." Pointing out that the plea-taking court provided Landt with the accurate statutory penalties and did not provide him with inaccurate information, the court determined "I don't see that the defense has established a prima facie case to move this forward to an evidentiary hearing."
¶8 We conclude that Landt did not make a prima facie showing under Bangert . According to his brief, Landt "recognizes and appreciates the circuit court's diligence and thoroughness in breaking down the penalties on each of the many counts" but suggests that the court should be held to a new standard because the case is "exceptional" in that Landt "pled guilty to an extraordinarily high number of charges." The circuit court's colloquy was thorough, complete, and accurate, and did not provide misleading or erroneous information about Landt's potential sentence. There was no defect in the plea colloquy.
¶9 Landt asks us to ignore the fact that circuit court stated in open court during the plea hearing that Landt "is facing 47 times three-and-a-half years, 164 years incarceration." According to Landt, this should not matter because it occurred after the court already accepted Landt's pleas. We are not persuaded. Even if, as Landt argues, it is unreasonable to expect that he would immediately speak up at the plea hearing, he took no action thereafter to suggest that he did not understand he could receive consecutive sentences. In fact, prior to sentencing he reviewed the PSI, which recommended consecutive sentences, and did not balk at sentencing when both the State and, to a lesser extent trial counsel, recommended sentences which would have required the imposition of multiple consecutive Class I sentences.
¶10 We reject as disingenuous Landt's contention that he was ignorant to the possibility of consecutive sentences. The circuit court ascertained that Landt had reviewed, signed and understood three separate plea questionnaire forms, one filed in connection with each case. In the maximum penalty portion of each plea form, it was written or typed that Landt faced a maximum sentence of three years and six months "as to each count," and each form spelled out the aggregate maximum for all counts included in that case. The three questionnaires read together stated that Landt was facing seventy and one-half years of initial confinement followed by ninety-four years of extended supervision, for an aggregate bifurcated sentence totaling 164 ½ years.[3]
Landt is not entitled to a sentence modification.
¶11 Both Landt and Wenckebach, his codefendant, pled to the same number of charges and were sentenced by the same circuit court judge, about a month apart. Wenckebach was sentenced after Landt, and the State recommended that she receive a prison sentence "similar to that given to [Landt]." The court imposed a shorter sentence with six years of initial confinement followed by twenty-seven years of extended supervision. According to Landt, the State's lesser recommendation coupled with Wenckebach's shorter sentence constitutes a new factor justifying modification of his sentence.
¶12 A new factor is a fact or set of facts that are "highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because ... it was unknowingly overlooked by all of the parties." State v. Harbor , 2011 WI 28, ¶40, 333 Wis. 2d 53, 797 N.W.2d 828 (citation omitted).
¶13 We conclude that the State's recommendation and Wenckebach's sentence were not "highly relevant" to the imposition of Landt's sentence. "Individualized sentencing ... has long been a cornerstone to Wisconsin's criminal justice jurisprudence." State v. Gallion , 2004 WI 42, ¶48, 270 Wis. 2d 535, 678 N.W.2d 197. "A mere disparity between the sentences of co-defendants is not improper if the individual sentences are based upon individual culpability and the need for rehabilitation." State v. Toliver , 187 Wis. 2d 346, 362, 523 N.W.2d 113 (Ct. App. 1994). Accordingly, when the sentencing court expresses "no desire for parity" between codefendants' sentences and instead bases the sentence on "the relevant factors, such as the severity of the offense, the need to protect the community, and the rehabilitative needs of [the defendant]," there can be no legitimate claim that the codefendant's sentence was "highly relevant" to the defendant's sentence. Toliver , 187 Wis. 2d at 361-62.
¶14 Here, there is no evidence that the sentencing court sought to impose on Landt a sentence that would be similar to the sentence imposed on Wenckebach. The court barely discussed Wenckebach at Landt's sentencing, and when it did, it rejected Landt's attempts to characterize Wenckebach as the main perpetrator. For example, it stated its belief that Landt convinced Wenckebach to commit the crimes, not the other way around:
There's a lot of talk about your coactor, and she's not here. Sometimes I believe the presentation in terms of Ms. Wenckebach was I call it the devil made me do it argument. There was a devil out there and she had a shaky past and she used to be a dancer and she used to take pictures and therefore I was-I succumbed to her charms, the devil. I just reject that. Because I go back to what I said then about you in terms of your character.
Later, the court reiterated that Landt, not Wenckebach, orchestrated the crimes: "But the crassness of what you did in terms of basically instructing your coactor how to get good pictures is alarming to me."
¶15 The court's main focus in sentencing Landt was to provide "supervision over a long period of time." The court believed there should be little to no portion of Landt's life "that he isn't under some supervision." The court's sentence of twelve years of initial confinement followed by sixty-one years of supervision reflected the court's intent.
¶16 Because Landt has failed to demonstrate that either the State's recommendations or achieving parity between Landt's and Wenckebach's sentences was highly relevant to Landt's sentencing, he has failed to demonstrate the existence of a new factor warranting sentence modification.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The Honorable S. Michael Wilk presided at sentencing and entered the judgment of conviction. The Honorable Jodi L. Meier entered the order denying postconviction relief.

Landt's motion also asked the circuit court to vacate thirty-one of the DNA surcharges imposed, which the circuit court granted. The order vacating DNA surcharges has not been appealed and is not before this court.

For example, Landt pled to five counts in circuit court case No. 2014CF406, and the plea form stated his understanding that "The maximum penalty I face upon conviction is: 3 years & 6 months prison (18 mos I/C & 24 mos E/S) and/or a $ 10,000 fine as to each count (max 7.5 yrs I/C + 10 yrs E/S & 50,000"). In the case to which he pled to a single count, the form stated the maximum as "3 years & 6 months prison (18 mos I/C & 24 mos E/S) and/or a $ 10,000 fine as to each count". And, in the case to which he pled to forty-one counts, the plea form stated the maximum as "3 years & 6 months prison (18 mos I/C & 24 mos E/S) and/or a $ 10,000 fine, as to each count (total of 61.5 yrs I/C & 82 yrs E/S)". Any immaterial discrepancy between the offer and plea forms is irrelevant to whether Landt understood that the circuit court could impose consecutive sentences.