STATE of Wisconsin, Plaintiff-Respondent,

v.

Anthony T. AMBROSE, Defendant-Appellant.†

Court of Appeals

*No. 92–2503–CR. Submitted on briefs July 15, 1993.—Decided December 21, 1993.*

(Also reported in 510 N.W.2d 758.)

†Petition to review denied.

For defendant-appellant the cause was submitted on the briefs of *Anthony J. Deutsch* and *John A. Birdsall* of *Gonzalez & Saggio*, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *William L. Gansner*, assistant attorney general.

Before Sullivan, Fine and Schudson, JJ.

SULLIVAN, J.   Anthony T. Ambrose appeals from a judgment of conviction for first-degree intentional homicide while armed, *see* secs. 940.01(1) and 939.63, Stats. Ambrose contends that the evidence adduced at trial was insufficient to support his conviction. Ambrose also appeals from an order denying his motion for sentence modification on the ground that a good prison record may be a new factor supporting modification of his life term which set parole eligibility at twenty-five years.

We conclude that the evidence was sufficient to convict and that the trial court did not err in refusing to consider Ambrose's prison behavior as a new factor to reassess his parole eligibility date.

Credible evidence adduced at trial supports the following scenario. Twenty-year-old Ambrose and his victim, Charles Brown, were acquaintances. They were among a group of family and friends at a Milwaukee tavern in the early morning hours of March 11, 1990. Ambrose asked Brown for a light for his cigarette. Brown refused; Ambrose took offense. Words were exchanged and the men left the tavern. More words were exchanged outside the tavern. Brown threw up his hands and walked toward his car. Ambrose drew a .38-caliber pistol from under his sweater. He said: "Don't walk away from me." With both arms out-

stretched and parallel to the ground, and with his left hand supporting his right wrist, Ambrose shot at Brown several times from a distance of approximately five to seven feet. Two bullets struck Brown in the back. One, which severed his aorta, caused death in a few seconds. Ambrose walked away.

At trial, Ambrose admitted that he shot Brown. He testified, however, that he was fearful of Brown because of previous encounters and that he believed that Brown was about to remove a gun from the trunk of his car.

The trial court submitted three possible verdicts to the jury: first-degree intentional homicide, second-degree intentional homicide, and first-degree reckless homicide. The jury convicted Ambrose of first-degree intentional homicide. The trial court sentenced Ambrose to life imprisonment and decided that Ambrose would first be eligible for parole in twenty-five years.

## SUFFICIENCY OF THE EVIDENCE

Ambrose first argues that the evidence was insufficient to convict him of first-degree intentional homicide. He argues that the State failed to prove the nonexistence of facts supporting unnecessary force as a mitigating circumstance. Ambrose further argues that the evidence failed to prove his intent to kill. At best, he contends, the evidence proves criminal recklessness as defined in sec. 939.24, Stats. We conclude that the evidence was sufficient to support the conviction.

> [I]n reviewing the sufficiency of the evidence to support a conviction, an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the

state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

*State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757-758 (1990) (citations omitted).

The inherent difficulty in proving intent was explained by the supreme court in *State v. Wells,* 51 Wis. 2d 477, 483, 187 N.W.2d 328, 331 (1971), *cert. denied*, 406 U.S. 907 (1972):

Seldom is an intent to kill ascertainable from the lips of the intender. Never can it be established by a retroactive mind-reading effort to determine what the actor was thinking when he planned and executed the act. That would require a crystal ball that recreated the past rather than sought to peer into the future.

■

Here, the jury heard evidence that Ambrose shot a man in the back twice at close range. Ambrose conceded that he did not know if Brown had a gun, that he did not see Brown reach into his pocket or into the trunk of his car for anything. The evidence was sufficient to allow the jury to rationally conclude that Ambrose did intend to kill Brown and that he *did not* act in a mistaken belief that Brown was about to kill him. Therefore, we confirm the jury's verdict.

## SENTENCE MODIFICATION

Ambrose argues that the trial court erred in concluding that his general post-sentence rehabilitation, particularly his adjustment to prison life including county jail time, does not constitute a new factor for the purposes of modification of sentence.

On April 10, 1991, the trial court sentenced Ambrose to life imprisonment. Pursuant to 973.014(2), Stats.,[1] which allows the trial court to set a parole eligibility date later than otherwise required by statute, the trial court indicated that Ambrose would be eligible for parole in twenty-five years.[2] Ambrose subsequently filed a motion in which he argued that new factors had arisen which justified the trial court's

---

[1] Section 973.014, Stats. (1991-92), provides:

When a court sentences a person to life imprisonment for a crime committed on or after July 1, 1988, the court shall make a parole eligibility determination regarding the person and choose one of the following options:

(1) The person is eligible for parole under s. 304.06(1).

(2) The person is eligible for parole on a date set by the court. Under this subsection, the court may set any later date than that provided in s. 304.06(1), but may not set a date that occurs before the earliest possible parole eligibility date as calculated under s. 304.06(1).

[2] Section 304.06(1)(b), Stats., provides that the parole commission may parole a prisoner under a life sentence after that prisoner has served "20 years, as modified by the formula under s. 302.11 (1) and subject to extension using the formulas under s. 302.11 (2)." Thus, as the Wisconsin Supreme Court has explained, "the absolute minimum period of time that a person convicted of a crime and sentenced to life imprisonment must actually be confined in prison before becoming eligible for parole release is approximately thirteen years and four months." *State v. Borrell*, 167 Wis. 2d 749, 765 n.6, 482 N.W.2d 883, 889 n.6 (1992).

reconsideration and modification of his sentence. The trial court denied the motion based upon its conclusion that Ambrose had not shown a "new factor."

A trial court cannot modify a sentence based solely upon "reconsideration and reflection and a deliberate change of mind"; rather, a modification of sentence must be based upon new factors. *State v. Kaster*, 148 Wis. 2d 789, 803, 436 N.W.2d 891, 897 (Ct. App. 1989). Ambrose accepts the definition of "new factor" set forth in *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69, 73 (1975):

> [A] fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.

Whether a fact or set of facts constitutes a new factor presents to this court a legal issue. *State v. Hegwood*, 113 Wis. 2d 544, 547, 335 N.W.2d 399, 401 (1983).

Ambrose acknowledges that this court and the supreme court have clearly stated that post-sentencing conduct, including favorable progress in a prison rehabilitation system, does not constitute a new factor for the purposes of modification of the length of a prison sentence. *See State v. Wuensch*, 69 Wis. 2d 467, 478, 230 N.W.2d 665, 671-72 (1975); *Kaster*, 148 Wis. 2d at 804, 436 N.W.2d at 897; *State v. Krueger*, 119 Wis. 2d 327, 335, 351 N.W.2d 738, 742 (Ct. App. 1984). Rather, post-sentencing conduct is a factor that relates to parole and is properly within the consideration of the Department of Health and Social Services (DHSS). *Id.;*

*State ex. rel Warren v. County Court,* 54 Wis. 2d 613, 620, 197 N.W.2d 1, 4-5 (1972).

Nonetheless, Ambrose argues that the previous cases did not address the issue of whether post-sentencing conduct may constitute a new factor for the modification of a parole eligibility date set pursuant to sec. 973.014, Stats. Ambrose argues that because the trial court set his parole eligibility date, "[a]n adjustment of incarceration cannot be made by the parole board or department of health and social services" based upon his rehabilitative progress. Ambrose further explains, "the ability of the parole board to make an adjustment of incarceration is removed in the case involving § 973.014, and there is no parole board or Program Review authorized to make adjustments or modify the judicially imposed parole eligibility date."

Ambrose's reasoning contains a fatal flaw"he fails to recognize that the parole board *never* has the ability to adjust or modify a parole *eligibility* date. That date is set by statute. *See* sec. 304.06(1)(b), Stats.[3] The fact that the parole board has no ability to adjust or modify the date on which the prisoner becomes *eligible* for parole has never entered into the discussion of whether post-sentencing progress constitutes a new factor for purposes of modifying the length of a sentence. In those cases, the parole board could consider the prisoner's post-sentencing conduct only *after* the prisoner became eligible for parole, and not before. Likewise, the parole board will consider Ambrose's post-sentencing conduct after he becomes eligible for parole. The fact that

[3] Section 304.06(1)(b), Stats., provides that, in general, a prisoner is eligible for parole after serving the greater of 25% of sentence imposed, or six months, and a prisoner under a life sentence is eligible for parole after serving "20 years, as modified," *see supra*, note 2.

Ambrose's parole eligibility date was set by the trial court, rather than by the legislature, is irrelevant.[4]

Because post-sentence rehabilitation is not a new factor which justifies sentence modification, and is properly left to DHSS evaluation in administering parole, we reject Ambrose's argument that the trial court erred in denying his motion for modification of sentence.

*By the Court.*—Judgment and order affirmed.

---

[4] The Wisconsin Supreme Court has examined sec. 973.014, Stats., and upheld it under constitutional challenges based upon "the separation of powers doctrine, due process protections, effective assistance of counsel assurances, prohibitions against cruel and unusual punishment, and the right to a meaningful appeal." *State v. Borrell*, 167 Wis. 2d 749, 759, 482 N.W.2d 883, 886 (1992).