**2024 WI App 40**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.: 2023AP1755-CR

Complete Title of Case:

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

  V.

ROBERT M. SCHUELLER,

  DEFENDANT-APPELLANT.

| | |
|---|---|
| Opinion Filed: | June 20, 2024 |
| Submitted on Briefs: | April 12, 2024 |

| | |
|---|---|
| JUDGES: | Blanchard, Graham, and Taylor, JJ. |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Matthew S. Pinix* and *Joseph S. Riepenhoff* of *Pinix Law, LLC*, Milwaukee. |
| Respondent<br>ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *John D. Flynn*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

# COURT OF APPEALS
## DECISION
## DATED AND FILED

### June 20, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No.** **2023AP1755-CR** | **Cir. Ct. No. 2004CF271** |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS** |

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

ROBERT M. SCHUELLER,

    DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Wood County: RICK T. CVEYKUS, Judge. *Reversed and cause remanded*.

Before Blanchard, Graham, and Taylor, JJ.

¶1 GRAHAM, J. Robert M. Schueller appeals a circuit court order that denied his postconviction motion for sentence modification based on a new factor. Schueller was sentenced in 2005, and during the sentencing hearing, his diagnosis of Post-Traumatic Stress Disorder ("PTSD"), which resulted in part from his

service in the Vietnam War, was a significant focus of the parties' arguments and the sentencing court's decision. The sentencing court specifically commented that Schueller's PTSD diagnosis was "a factor" that "slice[d] both ways"—it mitigated his culpability for his crime to a degree, but it also "aggravate[d] the situation" due to the danger that Schueller would always pose to the community as a result of his PTSD symptoms, which the court considered to be incurable. Schueller's recent motion requests modification of his sentence based on allegations that there are new, highly effective treatments for PTSD in veterans, and that PTSD in veterans is now highly treatable, even curable, in many cases. Schueller contends that the circuit court erred in denying his motion without holding a hearing on whether sentence modification is warranted.[1]

¶2     We conclude that the facts alleged in Schueller's motion, if true, establish that PTSD in veterans is now highly treatable and may even be curable, and that this set of facts was unknown to the sentencing court. Additionally, if true, this set of facts is also highly relevant to the imposition of Schueller's sentence—in imposing the sentence, the court stated that Schueller would always pose a danger to the community because he would always have PTSD, and it expressly relied on its understanding that PTSD is incurable in determining Schueller's terms of initial confinement and extended supervision. Accordingly, we reverse the circuit court order denying Schueller's motion, and we remand for further proceedings consistent with this opinion.

---

[1] The Honorable Thomas T. Flugaur presided over Schueller's sentencing in 2005, and the Honorable Rick T. Cveykus ruled on Schueller's 2023 sentence modification motion. For ease of reference, we refer to Judge Flugaur as "the sentencing court" and to Judge Cveykus as "the circuit court."

**BACKGROUND**

¶3 Schueller is a Vietnam War veteran with a diagnosed history of PTSD. In 2004, he was charged with first-degree intentional homicide. The charges stemmed from an altercation at a bar, during which Schueller got into a fight with the victim over the use of a pool table. It was undisputed that Schueller, who was intoxicated and under the influence of marijuana, left the bar, retrieved a gun, and returned to the bar. Then, during a second confrontation in the parking lot, Schueller shot and killed the victim. Schueller ultimately entered a no-contest plea to an amended count of second-degree intentional homicide.

¶4 Prior to sentencing, an employee of the state department of corrections prepared a presentence investigation report ("PSI"), which included a summary of an interview with Schueller. The PSI noted a dispute over whether and to what extent Schueller might have acted in self-defense on the night of the homicide. Additionally, the PSI noted that Schueller had been diagnosed with PTSD. According to the PSI, Schueller was first diagnosed in the 1980s, and that diagnosis had been reaffirmed shortly before the PSI was prepared.

¶5 The PSI discussed the extent to which Schueller's PTSD mitigated his culpability for the crime. In so doing, the PSI referenced two reports, one by a doctor and the second by a psychologist, who had each evaluated Schueller and rendered opinions about his mental health. We discuss each report in turn, but in summary, the experts agreed that Schueller had PTSD, and that the symptoms of PTSD include explosive emotional and behavioral outbursts and exaggerated responses to threatening situations. The experts diverged on whether and to what extent Schueller's PTSD mitigated his culpability for the crime. And neither

offered an opinion about treatments that were available to reduce or resolve PTSD symptoms.

¶6    Dr. Ralph K. Baker, M.D., is a medical doctor who was appointed by the circuit court to examine Schueller's mental responsibility for the crime. His report discussed Schueller's psychosocial history, his treatment history, and the extent to which his PTSD mitigated his culpability for the homicide. Dr. Baker opined that Schueller's "mental disorders diminished his capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law." However, based on Schueller's account of the events leading to the homicide, in which he stated that he acted rationally and in self-defense, Dr. Baker opined that Schueller "was able to appreciate the wrongfulness of his conduct and [was] able to conform his conduct to the requirements of the law."

¶7    Dr. Michael J. Nelson, PhD., is a psychologist who was retained by the defense. Dr. Nelson's report noted that Schueller reported seeing a psychologist for seven to eight sessions in the late 1980s after first receiving his PTSD diagnosis, and that Schueller had again started treatment for PTSD shortly before the homicide. The mental health records from Schueller's more recent treatments in 2004 indicated that Schueller was "treatment compliant," but "ha[d] been dealing with increasingly exacerbated PTSD." Dr. Nelson suggested that the "extreme insecurity, hypervigilance, paranoia, and marked over reactivity to perceived threats—which are hallmark of combat based PTSD"—contributed to Schueller's actions on the night of the homicide, and mitigated his culpability.

¶8    After referencing these reports, the PSI author took the position that Schueller's PTSD did not rationally explain his conduct or mitigate his culpability. In the author's view, the altercation was "not as simple as PTSD combined with a

self-medicating war vet having a flashback," but was instead the result of "calculating behavior combined with chemical impairment and poor decision making." The PSI recommended that Schueller receive a lengthy sentence of incarceration.

¶9 At sentencing, Schueller's PTSD, and specifically whether and to what extent it mitigated his culpability, was a major focus of the hearing. The defense argued that Schueller's PTSD would have made him, under the circumstances, "more scared than a normal person," and that it "diminished his capacity to appreciate the wrongfulness of the act and conform his conduct to the requirements of the law." To that end, the defense presented testimony from Dr. Nelson, who opined that, as a result of his PTSD, Schueller likely believed he was acting in self-defense when he attacked the victim. The prosecutor, by contrast, took a position similar to that advanced in the PSI. The prosecutor argued that Schueller's PTSD was not relevant because Schueller "was able to appreciate the wrongfulness of his conduct" and "was able to conform his conduct to the requirements of the law." The prosecutor further argued that Schueller left the bar and had time to calm himself, and instead "made a conscious effort" to return to the bar with a firearm.

¶10 There was no argument or evidence presented at the hearing regarding the treatment options, if any, that existed to reduce or resolve PTSD symptoms, or the effectiveness of any such treatments.

¶11 The sentencing court began its ruling by noting the general objectives of sentencing, which include protection of the community, punishment of the defendant, rehabilitation of the defendant, and deterrence to others. *See State v. Gallion*, 2004 WI 42, ¶¶40, 43 & nn.11, 12, 270 Wis. 2d 535, 678 N.W.2d

197. The court also noted other factors that it could take into account, and other factors that it was legally required to consider. *Id.* In rendering Schueller's sentence, the court focused primarily on punishment of the defendant and protection of the community as the two most significant sentencing objectives. Schueller's PTSD diagnosis figured prominently in the court's consideration of both objectives and, as the court explained, the diagnosis "slice[d] both ways."

¶12 With respect to punishment of the defendant, the sentencing court stated that Schueller had committed "the most serious offense in our society," and it noted several facts that further aggravated the seriousness of the offense. However, the court also considered Schueller's PTSD diagnosis to be a mitigating factor, "in terms of why he may have acted the way he did that night, being paranoid."

¶13 With respect to protection of the community, the sentencing court stated that Schueller's PTSD diagnosis "aggravates the situation when you look at somebody in terms of their danger to the public," because, in the court's view, persons with PTSD "tend to be explosive" and "quick to anger," and tend to "have violent tempers." The court noted other reported instances of Schueller's "anger and rage" that were detailed in the PSI, as well as statements by Schueller's family members about his temper. The court stated: "I understand that [PTSD] is something that Mr. Schueller will always have because of his service in Vietnam," and that, although PTSD was "treatable to a certain degree, … it's not something he will ever be cured of. So it's something that the court has concerns about when you look at the protection of the public."

¶14 The court determined that a significant period of confinement was needed due to both the seriousness of the offense and the need to protect the

community. Ultimately, the court sentenced Schueller to a 40-year bifurcated term, comprised of 25 years of initial confinement and 15 years of extended supervision. In explaining why it selected those terms, the court stated that Schueller would not be eligible for release on extended supervision until he was 80 years old, and at that age, "the danger to the public is significantly mitigated." Even so, the court stated, Schueller "would need to be on supervision for the balance of his life," "given [his PTSD] diagnosis."

¶15 Nearly 20 years after he was sentenced, Schueller filed a postconviction motion to modify the sentence.[2] In the motion, Schueller alleged that the availability of new, highly effective PTSD treatments had rendered PTSD in veterans highly treatable, and even curable. He argued that the treatability of PTSD in veterans is a new factor, and that it warrants sentence modification.

¶16 Attached to Schueller's motion was an expert report by Dr. Colin Mahoney, who performed a psychodiagnostic evaluation of Schueller in 2023. The report confirmed Schueller's PTSD diagnosis. It also provided an overview of contemporary treatment options that Dr. Mahoney recommended for Schueller and that were available on an outpatient basis at the time of the report. The report alleged that two treatments in particular, cognitive processing therapy and prolonged exposure therapy, are "the gold standard for what is implemented in the [federal Department of Veterans Affairs] healthcare system." And the report further alleged that, as a result of advancements in these two treatments, a large percentage of veterans who receive them experience a significant reduction in the

---

[2] A defendant may move to modify their sentence based on a new factor at any time. *See* *State v. Noll*, 2002 WI App 273, ¶¶11-12, 258 Wis. 2d 573, 653 N.W.2d 895.

severity of their symptoms such that they no longer meet the diagnostic criteria for PTSD.

¶17 The report alleges the following with respect to cognitive processing therapy. Several studies, all conducted after Schueller's sentencing in 2005, have shown cognitive processing therapy "to be effective for treating PTSD in Veterans and Service members." The first randomized clinical trial to provide cognitive processing therapy to U.S. veterans occurred in 2006, after Schueller was sentenced, and the study demonstrated that 40 percent of veterans who received cognitive processing therapy "no longer had PTSD by the end of the treatment." There have also been two recent advancements in the administration of the treatment. First, cognitive processing therapy was originally developed as a 12-session protocol, but it is now administered "over a variable number of sessions" according to patient needs, following a 2012 study which found that ending therapy based on patient progress yielded better results than using a prescribed number of sessions. By the end of the study, 92% of the participants who received variable length cognitive processing therapy no longer had a PTSD diagnosis. Second, although cognitive processing therapy may be administered "in individual, group, or combined individual and group formats," a 2017 study of active duty military personnel demonstrated that the therapy is most effective, and results in greater reduction in PTSD symptoms, when therapy is administered in individual settings.

¶18 With respect to prolonged exposure therapy, the report alleges that research conducted since Schueller's sentencing has demonstrated that using prolonged exposure therapy to treat veterans "produces large treatment effects in regard to PTSD symptom reduction and loss of diagnosis."

¶19    In his report, Dr. Mahoney opined that the research conducted since Schueller's sentencing demonstrates that, after receiving cognitive processing therapy and prolonged exposure therapy, veterans "can experience a significant reduction in PTSD symptom severity and no longer meet the diagnostic criteria for PTSD." The report indicated that cognitive processing therapy and prolonged exposure therapy are not available to inmates in Wisconsin prisons, but are the "gold standard" of treatment therapies implemented in the Department of Veterans Affairs healthcare system. Dr. Mahoney recommended that Schueller receive both therapies at a Veterans Affairs hospital on an outpatient basis.

¶20    As noted, in his motion for sentence modification, Schueller argued that the fact that PTSD in veterans is now highly treatable was unknown to the sentencing court at the time of his sentence. He further argued that the treatability of PTSD is highly relevant to the imposition of his sentence because the court imposed a lengthy period of initial confinement and extended supervision based on its understanding that PTSD could not be cured and would always render Schueller dangerous to the community. On this ground, Schueller asked the circuit court to exercise its discretion to modify his sentence by converting his remaining term of initial confinement to extended supervision.

¶21    The State opposed Schueller's motion. In its response, it appeared to acknowledge that there have been advances in PTSD treatments since Schueller's sentencing, and that protection of the community was one of the sentencing court's primary sentencing objectives. However, the State argued that Schueller failed to establish that these new facts were highly relevant to the imposition of his sentence. The State argued that it was not enough for Schueller to prove that his symptoms could "potentially" be reduced or resolved using new treatments. Alternatively, to the extent the court determined that Schueller had identified a

new factor that was highly relevant to the sentence, the State asked the court to exercise its discretion to determine that a modification of his sentence is not warranted.

¶22 The circuit court denied Schueller's motion in a written order without holding a hearing. In its order, the court stated that it had "no problem finding that the advances in treating combat veterans for PTSD over the last 20 years" that were alleged in Schueller's motion were "not known" to the sentencing court because "the advances had not yet occurred" at the time Schueller was sentenced. However, the court concluded that these advancements were not highly relevant to the imposition of Schueller's sentence for two reasons.

¶23 First, based on its review of the transcript from Schueller's sentencing, the circuit court determined that, although Schueller's PTSD had been discussed and considered at sentencing, the sentencing court viewed it as both a "mitigating and aggravating" factor and had "looked beyond" the diagnosis. The circuit court determined that "the seriousness of the offense" and "punishment of the offender" were the two "controlling" sentencing objectives. And the court reasoned that Schueller's PTSD diagnosis was not highly relevant to either objective, and that other aggravating factors were more relevant.

¶24 Second, the circuit court determined that Schueller had not presented any evidence establishing that "he would be one of those individuals" who, after receiving the new PTSD treatments, would "continue in a life without a PTSD diagnosis."

¶25 Schueller appeals.

**DISCUSSION**

¶26 Circuit courts have inherent authority to modify criminal sentences under certain circumstances. *State v. Harbor*, 2011 WI 28, ¶35, 333 Wis. 2d 53, 797 N.W.2d 828. One such circumstance is when a defendant has demonstrated the existence of a "new factor." *Id.* A "new factor" is "a fact or set of facts" that is "highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties." *Id.*, ¶40 (quoting *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975)). The existence of a new factor does not automatically entitle a defendant to sentence modification. *Id.*, ¶37. If a circuit court determines that a new factor is present, it must also consider whether it justifies sentence modification. *Id.*

¶27 Thus, to prevail on a motion for sentence modification based on a new factor, a defendant must make two showings. *Id.*, ¶36. First, the defendant must demonstrate the existence of a new factor by clear and convincing evidence. *Id.* Second, the defendant must demonstrate that the new factor justifies modification of the sentence. *Id.*, ¶38. The first step presents a question of law that we review de novo, and we review the circuit court's determination on the second step for erroneous exercise of discretion. *Id.*, ¶33.

¶28 A new factor motion is not a collateral postconviction challenge to a conviction or sentence that is subject to WIS. STAT. § 974.06 (2021-22).[3] *State v.*

---

[3] All references to the Wisconsin Statutes are to the 2021-22 version.

*Grindemann*, 2002 WI App 106, ¶19, 255 Wis. 2d 632, 648 N.W.2d 507.  Even so, we have nevertheless concluded that, upon receipt of a new factor motion, the circuit court "should proceed in a fashion similar to that outlined in … § 974.06(3)."[4]  *Id.*  Under that subsection, the court assumes that the nonconclusory facts alleged in a postconviction motion are true.  *State v. Allen*, 2004 WI 106, ¶12, 274 Wis. 2d 568, 682 N.W.2d 433.  Then applying the substantive standards that govern the defendant's legal claim, the court determines whether "the motion and the files and records of the action conclusively show that the [defendant] is entitled to no relief."  *See* § 974.06(3).  The defendant is not

---

[4]  WISCONSIN STAT. § 974.06(3), which sets forth the procedure for addressing collateral postconviction challenges, provides:

> Unless the motion and the files and records of the action conclusively show that the person is entitled to no relief, the court shall:
>
> (a) Cause a copy of the notice to be served upon the district attorney who shall file a written response within the time prescribed by the court.
>
> (b) If it appears that counsel is necessary and if the defendant claims or appears to be indigent, refer the person to the state public defender for an indigency determination and appointment of counsel under ch. 977.
>
> (c) Grant a prompt hearing.
>
> (d) Determine the issues and make findings of fact and conclusions of law.  If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or is otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the person as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the person or resentence him or her or grant a new trial or correct the sentence as may appear appropriate.

entitled to relief if the nonconclusory facts in the motion fail to satisfy the substantive legal standards that govern the defendant's claim, or if the record conclusively demonstrates that the defendant is not entitled to relief. *Allen*, 274 Wis. 2d 568, ¶12. If the court determines that the defendant is not entitled to relief, it may deny the motion without affording the State an opportunity to respond and without holding a hearing. *Id.*

¶29 As stated, a circuit court should proceed in a similar fashion when evaluating a motion for sentence modification based on the alleged existence of a new factor. *Grindemann*, 255 Wis. 2d 632, ¶19. In this context, the court assumes the truth of the nonconclusory facts alleged in the motion, and then determines whether, applying the substantive legal standards set forth in *Harbor* and considering the record as a whole, the defendant is not entitled to sentence modification. As we have explained, a defendant is not entitled to sentence modification if the facts alleged in the motion do not constitute a new factor as a matter of law—either because they are not new, or because they are not highly relevant to the sentence imposed. Nor is the defendant entitled to sentence modification if the circuit court determines that, in the exercise of its discretion, the alleged new factor does not warrant a modification of the defendant's sentence. *Harbor*, 333 Wis. 2d 53, ¶38. Under those circumstances, no response from the State or hearing is required. If, on the other hand, the nonconclusory facts alleged in the motion would, if true, constitute a new factor that might warrant sentence modification, then the court, after ensuring that the State has been served with the motion and has been given an opportunity to respond, shall "[g]rant a prompt hearing." *See Grindemann*, 255 Wis. 2d 632, ¶19 (citing WIS. STAT. § 974.06(3)).

13

¶30 Here, as noted, the circuit court disposed of Schueller's motion after reviewing the State's response but without holding a hearing on the ground that Schueller's allegations failed to establish the existence of a new factor. More specifically, although the court acknowledged that Schueller's motion alleged a set of facts that were not previously known to the sentencing court, it concluded that those facts were not highly relevant to the sentencing court's imposition of Schueller's sentence. The circuit court therefore concluded that, because Schueller had not established the existence of a "new factor," he was not entitled to sentence modification, and the court denied his motion without a hearing on that basis.

¶31 In the analysis that follows, we assume the truth of all nonconclusory facts alleged in Schueller's motion and corresponding materials, and we consider whether they establish the existence of a new factor as a matter of law. *See Allen*, 274 Wis. 2d 568, ¶12. We do not weigh in on the second step of the new factor analysis—whether the alleged new factor actually warrants sentence modification—because that is a determination left to the circuit court's discretion, and here, the circuit court did not exercise its discretion and make that determination. *See Harbor*, 333 Wis. 2d 53, ¶33; *see also Werner v. Hendree*, 2011 WI 10, ¶82, 331 Wis. 2d 511, 795 N.W.2d 423 (2010) ("When a [circuit] court fails to exercise a discretionary power … on the erroneous ground that the power does not exist, 'the usual practice is … to reverse and remand in order that the [circuit] court may exercise the discretion it previously refused to exercise.'" (citation omitted)).

¶32 On appeal, Schueller contends that the fact that PTSD in veterans is now highly treatable and even curable using new treatments is a new factor. For the reasons that we now explain, we agree.

14

¶33    First, the allegations in Schueller's postconviction materials are detailed and, if true, establish that PTSD in veterans such as Schueller is now highly treatable and even curable. If true, this is a "set of facts" that was "not known to the [sentencing court] at the time of original sentencing." *Harbor*, 333 Wis. 2d 53, ¶40 (citation omitted). Although the sentencing court was aware that PTSD was "treatable to a certain extent" and was also aware that Schueller had previously received some form of treatment for his PTSD, there was no information presented at the sentencing hearing about treatments that were available at that time, nor was there discussion of the efficacy of any such treatments. Dr. Mahoney's report establishes that new research into cognitive processing therapy and prolonged exposure therapy, undertaken after Schueller was sentenced, has demonstrated the effectiveness of using these treatments to treat PTSD in veterans, and that this new research has led to significant advancements in the provision of these treatments, which render them even more effective. The report establishes that PTSD in veterans such as Schueller is now highly treatable, even curable, on an outpatient basis. This is a new set of facts that was unknown to the sentencing court.

¶34    Second, as we now explain, this new set of facts is highly relevant to the imposition of Schueller's sentence.

¶35    As noted above, in its oral pronouncement of sentence, the sentencing court emphasized protection of the community as one of the most significant sentencing objectives, and the court's view that Schueller's PTSD was incurable figured prominently in the court's assessment of that objective. As mentioned, the court stated that Schueller experienced "explosive and quick" "anger" and had a "violent temper" as a result of his PTSD, which rendered him "a danger to the public." The court further stated that, although treatments were

15

available for PTSD, the diagnosis was something that Schueller would "always have" and would never be "cured of." We interpret the sentencing court's comment that Schueller could not be "cured" of PTSD to mean that he would always meet the diagnostic criteria for PTSD and would always have to cope with the symptoms associated with that diagnosis, which, in the court's assessment, made Schueller dangerous to the community.

¶36 The sentencing court's decision to impose 25 years of initial confinement and 15 years of extended supervision was directly tied to the court's perception that Schueller's PTSD could not be cured. In the court's assessment, Schueller would pose a significant danger to the community until he reached the age of 80 and, even thereafter, Schueller "would need to be on supervision for the balance of his life" "given this [PTSD] diagnosis." Had the sentencing court known that, as a result of advancements in treatments, Schueller's PTSD might be alleviated to the point that he no longer met the diagnostic criteria for PTSD, the sentencing court might have determined that Schueller posed less of a perpetual danger to the community, and may have imposed a shorter sentence.

¶37 Accordingly, accepting the facts alleged in Schueller's motion and supporting materials as true, we conclude that they are sufficient to establish the existence of a "set of facts highly relevant to the imposition of sentence, but not known to the [sentencing court] at the time of original sentencing." *Id.* (citation omitted).

¶38 We now address the State's several arguments to the contrary. As an initial matter, the State argues that the treatability of Schueller's PTSD is not highly relevant to the imposition of Schueller's sentence because the sentencing court "clearly stated that protection of the public and punishment were the two

most important considerations in it sentence." This argument misses the mark—as we have explained, the court's understanding about the susceptibility of PTSD to treatment figured prominently in its assessment of the danger that Schueller posed to the community. That the court also considered the gravity of the offense does not undermine our conclusion that the court's understanding about the effectiveness or ineffectiveness of treatment for PTSD played a significant role in its sentencing decision, and was thus highly relevant to the imposition of Schueller's sentence.

¶39 Separately, the State likens Schueller's motion to two different lines of cases that, the State contends, impose categorical rules about facts unknown at sentencing that cannot constitute a new factor as a matter of law. One line of cases addresses a defendant's postsentencing rehabilitation, and the other addresses new research and expert opinion that confirms facts and conclusions known at the time of sentencing. As we proceed to explain, the State's attempts to analogize Schueller's motion to these two lines of cases are unpersuasive.

¶40 We begin with the cases that have determined that a defendant's postsentencing response to treatment and rehabilitation is not a new factor warranting modification. *See, e.g.*, ***State v. Wuensch***, 69 Wis. 2d 467, 478, 230 N.W.2d 665 (1975); ***Jones v. State***, 70 Wis. 2d 62, 72, 233 N.W.2d 441 (1975); ***State v. Kluck***, 210 Wis. 2d 1, 7-8, 563 N.W.2d 468 (1997); ***State v. Krueger***, 119 Wis. 2d 327, 335, 351 N.W.2d 738 (Ct. App. 1984); ***State v. Prince***, 147 Wis. 2d 134, 136-37, 432 N.W.2d 646 (Ct. App. 1988); ***State v. Johnston***, 184 Wis. 2d 794, 823, 518 N.W.2d 759 (1994); ***State v. Ambrose***, 181 Wis. 2d 234, 240, 510 N.W.2d 758 (Ct. App. 1993); ***State v. Champion***, 2002 WI App 267, ¶13, 258 Wis. 2d 781, 654 N.W.2d 242, *overruled in part by* ***Harbor***, 333 Wis. 2d 53; ***State v. Crochiere***, 2004 WI 78, ¶15, 273 Wis. 2d 57, 681 N.W.2d 524, *overruled in*

*part by* **Harbor**, 333 Wis. 2d 53; **State v. McDermott**, 2012 WI App 14, ¶15, 339 Wis. 2d 316, 810 N.W.2d 237. The State reasons that, if a defendant's postsentencing rehabilitation or response to treatment are categorically not considered to be new factors, then a defendant's potential postsentencing response to treatment also cannot be a new factor.

¶41 Whether or not the rule that emerges from the rehabilitation-based cases is as categorical as the State asserts, the State's attempt to analogize Schueller's motion to those cases is unpersuasive for two reasons. First, the argument Schueller advances in his motion is an entirely different species of argument than the one advanced in the vast majority of those cases. In those cases, the common argument was that incarceration was no longer needed to fulfill the objectives of sentencing because one of those objectives—the defendant's rehabilitation—had been fulfilled before the defendant finished serving the sentence that had been imposed. *See, e.g.*, **Champion**, 258 Wis. 2d 781, ¶5 (rejecting the argument that Champion's early completion of prison-based rehabilitative programs constituted a new factor because the sentencing court's main concern was her alcohol and drug addiction, and she had been able to complete such programming earlier than expected). Second, in each of those cases, the court rejected the defendant's argument about postsentencing rehabilitation, either because the job of evaluating whether a defendant had been rehabilitated was for the parole system rather than the court system, or because

releasing a defendant based on successful rehabilitation would be contrary to the legislative purpose underlying the enactment of truth-in-sentencing.[5]

¶42 Here, by contrast, Schueller's argument is not that his sentence should be modified on the ground that the rehabilitative objective of sentencing has been achieved through his postsentencing rehabilitation. Indeed, Schueller's motion is not based on any claim that he has benefited from the treatment that he has received while in prison, nor on allegations that his conduct record in prison has been good and suggests that he has been rehabilitated. The argument is instead that his sentence should be modified because the sentencing court expressly premised the sentence on the court's understanding that the symptoms of Schueller's PTSD would always make him dangerous to the community, and that, based on advancements in PTSD treatment, that underlying premise is no longer correct. Therefore, the analogy that the State attempts to draw between

---

[5] As we now briefly explain, statutory changes to the Wisconsin sentencing system have not altered the rule that emerges from these cases, although it has altered the rationale for that rule. In 1999 and 2003, the legislature enacted a series of statutory revisions to Wisconsin's sentencing regime, which are commonly referred to as "truth-in-sentencing." *See State v. Champion*, 2002 WI App 267, ¶1 n.1, 258 Wis. 2d 781, 654 N.W.2d 242 (addressing TIS I), *overruled in part by State v. Harbor*, 2011 WI 28, ¶35, 333 Wis. 2d 53, 797 N.W.2d 828; *State v. Crochiere*, 2004 WI 78, ¶5, 273 Wis. 2d 57, 681 N.W.2d 524 (addressing TIS I), *overruled in part by Harbor*, 333 Wis. 2d 53. Prior to truth-in-sentencing, Wisconsin cases sometimes concluded that a defendant's postsentencing rehabilitation was not the proper subject of a motion for sentence modification, and was instead properly addressed to the state administrative agency that was in charge of parole decisions. *See State v. Wuensch*, 69 Wis. 2d 467, 478, 230 N.W.2d 665 (1975); *Jones v. State*, 70 Wis. 2d 62, 72, 233 N.W.2d 441 (1975); *State v. Krueger*, 119 Wis. 2d 327, 335, 351 N.W.2d 738 (Ct. App. 1984); *State v. Prince*, 147 Wis. 2d 134, 136-37, 432 N.W.2d 646 (Ct. App. 1988); *State v. Ambrose*, 181 Wis. 2d 234, 240, 510 N.W.2d 578 (Ct. App. 1998). Following the enactment of truth-in-sentencing legislation, we concluded that a defendant's postsentencing rehabilitation was not a new factor because concluding as much would "contravene[] the legislative intent behind truth-in-sentencing." *Champion*, 258 Wis. 2d 781, ¶¶6-13. And, our supreme court affirmed *Champion*'s central conclusion in *Crochiere*, 273 Wis. 2d 57, ¶¶18-23.

19

Schueller's motion and the cited cases is inapt, and the rule that emerges from these cases does not preclude the argument that Schueller makes in this case.

¶43     We now turn to the line of cases that address new research and expert opinion that is based on previously known or knowable facts or that merely confirms previously known conclusions.  The State contends that "new recommendations about treatment" for a mental health disorder that was known at the time of sentencing is nothing more than "a new appreciation or expert opinion about previously known facts," and that these cases foreclose Schueller's argument.

¶44     The State cites *State v. Slagoski*, 2001 WI App 112, 244 Wis. 2d 49, 629 N.W.2d 50, *overruled in part by Harbor*, 333 Wis. 2d 53, in support of this proposition, but *Slagoski* is readily distinguishable in material ways from this case.  There, at the time that Slagoski was sentenced, the court was presented with differing views about Slagoski's mental health and the dangers that he might pose to himself or others in the future.  *Id.*, ¶11.  Then, after his sentencing, Slagoski retained a new expert who submitted a new report that disagreed with some aspects of a prior expert's opinion.  *Id.*  Slagoski argued that the new expert opinion constituted a "new factor."  *Id.*  We rejected that argument because, although the new expert report was itself new, it reached no new conclusions and established no new facts.  *See id.* ("determinations similar to [the new expert's report]" were in existence and made available to the sentencing court at the time of sentencing).  Here, by contrast, Dr. Mahoney's report alleges new facts about the existence of new PTSD treatments and their effectiveness, and it draws new

conclusions about the treatability, and curability, of PTSD in veterans from those new facts, all of which were unknown to the sentencing court at sentencing and are highly relevant to the sentence imposed.[6]

¶45    Finally, the State also argues that Schueller's motion is insufficient to establish the existence of a new factor by clear and convincing evidence because Schueller does not adequately demonstrate that he himself would benefit from the new treatments cited in Dr. Mahoney's report. We are not persuaded that such a showing is required. Again, the sentencing court expressly relied on its understanding that PTSD was incurable when it sentenced Schueller, and the information about clinical trials that are cited in Dr. Mahoney's report suggests that, given the advancements in PTSD treatments, a significant percentage of veterans with PTSD emerge from treatment with either a significant reduction in PTSD symptom severity or no PTSD diagnosis at all. It may be that the circuit court could appropriately consider information about Schueller's access and potential amenability to treatment in determining whether a modification of Schueller's sentence is warranted, but the State's speculation on those points does not prevent us from concluding that the set of facts alleged in Schueller's motion,

---

[6] The State does not discuss a number of other cases in this line that have similarly concluded that new research that merely confirms previously rendered conclusions or a new opinion about previously known facts does not constitute a new factor for the purpose of sentence modification. *See, e.g.*, *State v. Ninham*, 2011 WI 33, ¶¶87, 91, 333 Wis. 2d 335, 797 N.W.2d 451 (concluding that new scientific research about adolescent brain development did not constitute a new factor because, although the research was new, it merely confirmed long-known conclusions about adolescent brains); *State v. McDermott*, 2012 WI App 14, ¶16, 339 Wis. 2d 316, 810 N.W.2d 237 (same); *State v. Sobonya*, 2015 WI App 86, ¶¶6-7, 365 Wis. 2d 559, 872 N.W.2d 134 (concluding that a new expert opinion, which opined that granting Sobonya expungement would not undermine the deterrent effect of her sentence, was not a new factor because it was merely a new opinion about previously known or knowable facts). Even so, we have reviewed these cases and conclude that they do not support the State's argument here.

which at this stage we must accept as true, constitute a new factor as a matter of law.

¶46 In summary, accepting the facts alleged in Schueller's motion and supporting materials as true, they are sufficient to establish the existence of a set of facts that are highly relevant to the imposition of Schueller's sentence, but that were not known to the sentencing court at the time of the original sentencing. That is, these facts, if true, establish the existence of a new factor as a matter of law. We therefore reverse the circuit court order denying Schueller's motion, and we remand for further proceedings consistent with this opinion.

¶47 As a result of our conclusion, the circuit court has several options on remand, which we highlight for clarity.

¶48 The circuit court could decide to hold an evidentiary hearing to address the facts alleged in Schueller's motion and determine whether Schueller has met his burden of establishing a new factor by clear and convincing evidence. If the court determines that Schueller has met that burden, the court would be required to make a discretionary determination about whether modification of Schueller's sentence is warranted based on all relevant facts in the record, including those proven at the hearing.

¶49 Alternatively, the circuit court could determine, in the exercise of its discretion, that, even if Schueller were to prove each of the facts alleged in the motion at a hearing, which we have concluded established the existence of a new factor as a matter of law, modification of Schueller's sentence is not warranted. In that circumstance, the court would then be required to issue a decision explaining its exercise of discretion, but it would not be required to hold a hearing.

*By the Court.*—Order reversed and cause remanded.