COURT OF APPEALS
DECISION
DATED AND FILED

September 18, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP887-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF1141

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MARIO T. TUCKER,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Rock County: KARL HANSON, Judge. *Affirmed.*

Before Graham, P.J., Blanchard, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Mario Tucker appeals a judgment and an order of the circuit court denying his postconviction motion seeking a modification of his

sentence. Tucker argues that evidence given by an expert retained by the defense after sentencing, concluding that Tucker is "borderline cognitively impaired" and has "traits of paranoid personality disorder," constitutes a new factor that warrants sentence modification. The circuit court denied Tucker's sentence motion based on the court's conclusion that the expert evidence did not constitute a new factor, and, alternatively, even if the evidence constituted a new factor, it did not warrant modifying the sentence. Tucker requests that this court reverse the order denying his motion and remand for the circuit court to exercise its discretion to modify the sentence based on the purported new factor. We assume without deciding that the expert evidence identified by Tucker constitutes a new factor. With that assumption, we conclude that Tucker fails to show that the circuit court erroneously exercised its discretion in declining to modify Tucker's sentence.

## BACKGROUND

¶2 In December 2020, Tucker was charged with a single count of first-degree intentional homicide contrary to WIS. STAT. § 940.01(1)(a), based on a fatal shooting.[1] At trial, the defense argued in pertinent part that Tucker acted in complete (perfect) self-defense and should be acquitted on that basis.[2] The jury

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

[2] Our supreme court has explained:

> The [Wisconsin] statutes define two types of self-defense: perfect and imperfect. Imperfect self-defense is an affirmative defense to first-degree intentional homicide. WIS. STAT. § 940.01(2)(b)[]. It is aptly named because, when successful, it reduces a charge of first-degree intentional homicide to second-degree intentional homicide and therefore does not function as a complete (perfect) defense to a homicide charge. *Id.*

*State v. Johnson*, 2021 WI 61, ¶19, 397 Wis. 2d 633, 961 N.W.2d 18 (footnote omitted).

(continued)

convicted Tucker of second-degree intentional homicide. *See* WIS. STAT. § 940.01(2).

¶3      The circuit court ordered the state department of corrections to prepare a presentence investigation report.  The report recommended a sentence of 16 years of initial confinement followed by 7 years of extended supervision.  The State recommended that the court impose 30 years of initial confinement and 20 years of extended supervision, while the defense argued the court should either follow the PSI recommendation or impose a lesser sentence.  The court imposed 30 years of initial confinement and 20 years of extended supervision.

¶4      Represented by new counsel after sentencing, Tucker retained a psychologist, Dr. Brian Stress, to conduct a neuropsychological examination of Tucker and to produce a report that was submitted to the circuit court as part of a postconviction motion.  The report included the following assertions.  Tests conducted by Dr. Stress indicated that Tucker had an IQ of 82, which meant that his cognitive ability fell within the "borderline impaired" range.  Testing also showed that aspects of Tucker's executive functioning fell within the borderline impaired range.  Tucker exhibited characteristics of "paranoid personality disorder," along with "additional personality disorder symptoms."  These traits made it "more likely than not" that Tucker was "at significant risk of misinterpreting others' behaviors as a threat towards him, which could result in unjustified defensive aggressive behaviors."

---

On a related note, in closing argument, defense counsel here also appeared to invite the jury to consider a verdict of first-degree or second-degree reckless homicide, contrary to WIS. STAT. §§ 940.02(1) and 940.06, respectively, in the event that the jury did not accept the complete self-defense theory.

3

¶5 In the postconviction motion, Tucker requested that the circuit court modify his sentence, arguing that Dr. Stress' report constituted a "new factor" that warranted modification. *See State v. Schueller*, 2024 WI App 40, ¶26, 413 Wis. 2d 59, 10 N.W.3d 423 (circuit courts have inherent authority to modify criminal sentences when a defendant has demonstrated the existence of a "new factor").

¶6 The circuit court held an evidentiary hearing at which Dr. Stress and Tucker's trial counsel testified. Dr. Stress testified that, based on the results of his evaluation, Tucker's executive function abilities were "significantly lower" than those of an average person. One consequence of this was that Tucker's ability to process information was "limited compared to somebody [in the] low average to average range" and that Tucker might make decisions that do not "take into [account] numerous nuances that may be generally utilized [by] somebody who has a higher cognitive capacity." Dr. Stress testified, consistent with his report, that Tucker's cognitive ability and personality traits "more likely than not contribute[]" to Tucker "misinterpreting" or "misperceiv[ing]" the behavior of others as representing threats to him.

¶7 The circuit court denied Tucker's motion. The court generally credited Dr. Stress' report and testimony ("the expert evidence") but concluded that it did not constitute a new factor. This was based on the court's determination that the relative deficits and personality traits described by Stress were already evident in the trial record and that the court had taken these dynamics into consideration at sentencing, albeit without the precision afforded by the expert evidence.

¶8    In the alternative, the circuit court concluded that, even if the expert evidence constituted a new factor, it did not warrant a sentence modification. The court said that the additional "nuance" regarding Tucker's mental health provided by the expert evidence did not "diminish," in the court's mind, the level of Tucker's culpability, nor did it change the court's view on the need for punishment, which the court described as the primary driver of the sentence. The court said that, even if the perspective provided by the expert evidence marginally increased the court's impression that Tucker could successfully rehabilitate, that would not outweigh the need for punishment. For these reasons, the court concluded, there were "not sufficient grounds" for the court to exercise its discretion to modify the sentence, which the court continued to consider to be "the most appropriate sentence given all the facts and circumstances of this case." Tucker appeals.

## DISCUSSION

¶9    A new factor is "'a fact or set of facts highly relevant to the imposition of sentence, but not known to the [circuit court] at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.'" *State v. Harbor*, 2011 WI 28, ¶40, 333 Wis. 2d 53, 797 N.W.2d 828 (quoting *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975)).

¶10    Deciding a sentence modification motion based on a new factor is potentially a two-step inquiry that can end if the first step is not satisfied. *Harbor*, 333 Wis. 2d 53, ¶36. In the first step, the defendant must demonstrate the existence of a new factor by clear and convincing evidence. *Id.* We review this determination de novo. *Id.*, ¶33. To meet this burden, the defendant must show

5

both that the fact or facts are "new," that is, that they were not known to the circuit court at the time of sentencing, and that the fact or facts are "highly relevant to the sentence imposed." *Schueller*, 413 Wis. 2d 59, ¶29. Here, we assume without deciding that Tucker met this burden.

¶11 In the second step of the new-factor-based modification inquiry, the circuit court exercises its discretion to determine whether the new factor justifies modification of the sentence. *Harbor*, 333 Wis. 2d 53, ¶37. An appellate court reviews this determination for an erroneous exercise of discretion. *Id.*, ¶33.

¶12 We begin with a significant deficiency in Tucker's appellate briefing. Tucker's brief-in-chief on appeal does not explicitly address the second step or address the standards for that step. The State, in its response brief, highlights these omissions and contends that they are a sufficient basis to reject Tucker's argument on appeal, citing *State v. Pettit*, 171 Wis. 2d 627, 492 N.W.2d 633 (Ct. App. 1992). *See* WIS. STAT. RULE 809.19(1)(b), (d), (e). In reply, Tucker acknowledges that his initial brief "did not include a specific section arguing that the circuit court" erroneously exercised its discretion on the second step of the test. But, Tucker contends, his arguments addressing the first step included references sufficient to stand for a challenge to the postconviction court's exercise of discretion on the second step.

¶13 We question whether Tucker's attempt to reframe his argument in his reply brief constitutes a timely development of all of the issues he needs to raise in this appeal to potentially merit reversal of the circuit court's decision. *See State v. Lock*, 2013 WI App 80, ¶38 n.6, 348 Wis. 2d 334, 833 N.W.2d 189 (court of appeals typically declines to address issues raised for the first time in reply brief). But beyond that, when we review Tucker's argument on the merits, we

conclude that he fails to establish that the circuit court erroneously exercised its discretion on the second step of the test for reasons that we now explain.

¶14 Tucker suggests that the expert evidence demonstrates that it was not appropriate for the sentencing court to give primary weight to the need for punishment. Specifically, Tucker argues that the expert evidence shows that Tucker "truly believed" that, under the circumstances, shooting the victim was "the only way to protect himself from death or great bodily harm" and that he lacked an intent to harm the victim or did not even have a reckless or negligent state of mind. From this, Tucker apparently intends to argue that, with the benefit of the expert evidence, the circuit court should have viewed Tucker as having such a low level of culpability that there was significantly less need to punish Tucker than was apparent at the time of sentencing. But Tucker fails to show that the circuit court could not reasonably view the expert evidence as merely providing additional support for how the court in fact weighed intent-related factors at sentencing. For these reasons, Tucker fails to show that it was unreasonable for the court to determine that the expert evidence did not reduce, in the court's judgment, Tucker's level of culpability or the need for punishment.

¶15 The jury's verdict is relevant background for our conclusion because at times Tucker makes arguments that contradict the guilty verdict on which the circuit court was obligated to rely. The jury's determination that Tucker is guilty of second-degree intentional homicide signifies the following findings: that

7

Tucker intended to kill the victim;[3] that Tucker believed both that he was in imminent danger of death or great bodily harm and that shooting the victim was necessary to defend himself; but that it was unreasonable for Tucker to believe either that he was in danger or that shooting the victim as he did constituted a necessary level of force. *See* WIS. STAT. §§ 940.01(1)(a), (2)(b), 940.05(1)(a); WIS JI—CRIMINAL 1016. Consistent with these implied findings of the jury, the circuit court at sentencing explained that it viewed Tucker as having committed "a very serious offense" in which he took another person's life. Against this background, the court explained in its postconviction decision that the expert evidence served only to reinforce what was already apparent to the court at the time of sentencing. Namely, Tucker acted on an unreasonable belief in responding to a perceived threat, and under all of the circumstances this called for a sentence that emphasized the goal of punishment.[4]

---

[3] Consistent with how the jury was instructed at trial, "intent to kill" for purposes of first- and second-degree homicide, as applied here, means that Tucker "had the mental purpose to take" the victim's life or that Tucker "was aware that his conduct was practically certain to cause" the victim's death. *See* WIS. STAT. §§ 939.23(4), 940.01(1)(a), (2)(b), 940.05(1)(a); WIS JI—CRIMINAL 1016.

[4] Tucker makes a series of confusing references to the circuit court's reasoning at the sentencing hearing. Tucker apparently means to assert that the court did not consider his state of mind at the time of the shooting, and he identifies statements of the court at sentencing that Tucker asserts show that the court misunderstood his level of intent. However, Tucker does not persuade us that the sentencing court ignored or misapplied evidence as to Tucker's state of mind. So far as Tucker shows, the court at all pertinent times understood—consistent with the jury verdict—that Tucker had either the mental purpose to take the victim's life or the awareness that the shooting was practically certain to cause the victim's death. *See supra* note 3. And, contrary to some of Tucker's assertions, nothing in Dr. Stress' testimony, even as fully credited by the court, could support the view that Tucker lacked a "guilty mind" in the sense that he did not intend to kill the victim based on an unreasonable belief that shooting the victim was necessary for his self-defense.

¶16 In sum, Tucker does not show that the circuit court erroneously exercised its discretion in determining that the expert evidence did not merit sentence modification.

## CONCLUSION

¶17 For all of these reasons, the judgment of conviction and order denying Tucker's postconviction motion are affirmed.

*By the Court*.—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.