COURT OF APPEALS
DECISION
DATED AND FILED

July 15, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1529-CR**

Cir. Ct. No. 2022CF475

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RYAN B. S. TATE, JR.,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MICHAEL J. HANRAHAN and MICHELLE A. HAVAS, Judges. *Order affirmed in part, reversed in part and cause remanded with directions.*

Before Donald, P.J., Geenen, and Colón, JJ.

Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).

¶1 PER CURIAM. Ryan B. S. Tate, Jr., appeals a judgment and an order denying his postconviction motion.[1] On appeal, Tate contends that the postconviction court erroneously found that a change in a Department of Correction (DOC) policy rendering Tate ineligible for participation in the Challenge Incarceration Program (CIP), *see* WIS. STAT. § 302.045 (2023-24),[2] and his DOC substance abuse needs classification were not new factors entitling him to sentence modification. As discussed below, we agree with Tate that the DOC's policy rendering him ineligible for participation in the CIP is a new factor. We disagree, however, that his DOC substance abuse needs classification is a new factor. Therefore, we reverse in part and affirm in part the order denying Tate's postconviction motion.[3] On remand, we direct the court to determine whether Tate's ineligibility for the CIP justifies sentence modification.

## BACKGROUND

¶2 On December 16, 2022, Tate entered guilty pleas to armed robbery; second-degree recklessly endangering safety; fleeing or eluding an officer; fleeing or eluding an officer causing property damage; first-degree recklessly endangering safety; and possession of a dangerous weapon by a person under eighteen.

---

[1] The Honorable Michael J. Hanrahan presided over Tate's plea hearing and sentencing. The Honorable Michelle A. Havas decided the postconviction motion. We refer to Judge Hanrahan as the trial court and Judge Havas as the postconviction court.

[2] We note that Tate committed his offenses in February 2022. However, because the relevant statutory language has not changed, all references to the Wisconsin Statutes are to the 2023-24 version.

[3] While the appellant appeals from both a judgment and an order, we address only the order for the reasons set forth in this opinion.

Additional counts were dismissed and read-in. Tate agreed that the trial court could rely on the criminal complaint as a factual basis for his pleas.

¶3 According to the criminal complaint, on February 1, 2022, seventeen-year-old Tate, while armed, stole a Jeep from a Lyft driver. Tate subsequently fled from police on three separate occasions over the course of two days. During the pursuits, Tate travelled in the Jeep at high rates of speed, drove into oncoming traffic lanes, and ignored stop signs and red lights. Before the final pursuit, Tate was observed speeding past other motorists and using the shoulder lane. Officers attempted to conduct a traffic stop, but Tate disregarded the emergency lights and sirens and increased the Jeep's speed. Eventually, Tate ignored a red traffic light, causing a collision with another vehicle. The Jeep flipped sideways and struck several parked vehicles, poles, and guardrails. There were two passengers in the vehicle with Tate; one was ejected and suffered a serious facial injury.[4]

¶4 On March 21, 2023, a sentencing hearing took place. The State recommended a substantial prison sentence. Defense counsel asked the trial court to sentence Tate to an imposed and stayed prison sentence with six years of probation and twelve months of condition time. In support of this recommendation, defense counsel emphasized that Tate was seventeen at the time of the offense and had no prior criminal or juvenile record. Defense counsel also requested that the trial court grant Tate eligibility for the CIP and the Wisconsin

---

[4] At sentencing, the prosecutor indicated that the other passenger in the Jeep suffered injuries "from the whiplash" and the "glass being shattered." Additionally, an individual in one of the cars that Tate crashed into was also injured.

Substance Abuse Program (SAP), *see* WIS. STAT. § 302.05.[5] Defense counsel noted that Tate started smoking marijuana daily when he turned seventeen and tried Percocet "a few times," including taking three pills on the day of the offense, which "clouded his judgment."

¶5 Tate was sentenced to a total of five years of initial confinement and six years of extended supervision. Relevant to this appeal, the trial court stated that "I can't really accept that it was just some pot and [Tate taking] a few Percocet pills that led [him] to this[.]" The court observed that Tate apologized to the Lyft driver when stealing the Jeep and noted how "[i]t didn't seem like [Tate was] out of it, you know, out of your mind on drugs and not really knowing what you [were] doing. You knew what you were doing." With respect to programming, the court stated:

> I'm going to make you eligible for the [CIP]. I think that's the appropriate program for you, given your age. I'm not making you eligible for the [SAP]. I don't see the drugs as a major problem. I think it's more cognitive, that you need to be thinking about good decisions. You certainly weren't on that day back last February.

The court further stated that Tate would be eligible for the CIP after serving two years and six months in prison.

¶6 Tate filed a postconviction motion requesting eligibility for the SAP. In support, Tate noted that there was a new DOC policy, # 300.00.12, which excluded inmates convicted of certain offenses after April 10, 2022 from participating in the CIP. Under this new policy, Tate was precluded from

---

[5] The SAP was formerly known as the Earned Release Program. The program is identified by both names in the current version of the Wisconsin Statutes. *See* WIS. STAT. §§ 302.05, 973.01(3g).

participating in the CIP because he was convicted of armed robbery, WIS. STAT. §§ 943.32(2), first-degree reckless endangerment, 941.30(1), and second-degree reckless endangerment, 941.30(2). *See* DOC Division of Adult Institutions Policy # 300.00.12, § IV.C.2. (March 20, 2023). Tate also observed that his DOC inmate classification form assigned him "Substance Use Disorder (SUD) Level 4, which is the highest level of care under the DOC's SUD categories." The form noted that Tate reported using Percocet more than five times. Thus, Tate argued that the trial court should grant him eligibility for the SAP in order to "accomplish the [trial court's] intent to incentivize Mr. Tate to participate in treatment by reducing his term of incarceration[.]"

¶7      The postconviction court denied Tate's motion. The court found that Tate's inability to enroll in the CIP and the DOC's determination of his substance abuse treatment needs were not new factors. The court stated that "[t]here is nothing in [the trial court's] sentencing remarks which would indicate that [the trial court] predicated [Tate's] sentence on an assumption that [Tate] would necessarily be enrolled in CIP or release[d] any sooner than serving the full confinement term." In regards to Tate's substance abuse needs, the court stated that the same facts and arguments were conveyed at the time of sentencing and the attempt to draw a connection between Tate's substance abuse and his crimes was rejected. Tate now appeals.

**DISCUSSION**

¶8      On appeal, Tate contends that his ineligibility for the CIP and the DOC's substance abuse needs classification are new factors.[6]

¶9      A new factor is "a fact or set of facts" that is "highly relevant to the imposition of sentence, but not known to the [trial court] judge at the time of original sentencing, either because it was not then in existence or because … it was unknowingly overlooked by all of the parties." *State v. Harbor*, 2011 WI 28, ¶40, 333 Wis. 2d 53, 797 N.W.2d 828 (citation omitted).  A defendant has the burden to show by clear and convincing evidence that a new factor exists.  *Id.*, ¶36.  If a new factor is present, the trial court then "determines whether that new factor justifies modification of the sentence." *Id.*, ¶37.

¶10      Whether a fact or set of facts constitutes a new factor is a question of law that we review independently.  *State v. Grindemann*, 2002 WI App 106, ¶22, 255 Wis. 2d 632, 648 N.W.2d 507.

I.      **Tate's ineligibility for the CIP**

¶11      The CIP provides participants with "manual labor, personal development counseling, substance abuse treatment and education, military drill and ceremony, counseling, and strenuous physical exercise[.]"  WIS. STAT. § 302.045(1).  When imposing a bifurcated sentence, the trial court must first

_____

[6] The State suggests in passing that Tate forfeited his substance abuse classification argument by failing to develop it in his postconviction motion.  Even assuming without deciding that Tate forfeited this argument, we opt to exercise our discretion and address it for the purposes of completeness.  *See State v. Kaczmarski*, 2009 WI App 117, ¶7, 320 Wis. 2d 811, 772 N.W.2d 702 ("Forfeiture is a rule of judicial administration, and whether we apply the rule is a matter addressed to our discretion.").

determine whether the defendant meets certain statutory criteria under § 302.045(2). ***State v. Steele***, 2001 WI App 160, ¶8, 246 Wis. 2d 744, 632 N.W.2d 112. Then, as a part of the exercise of its sentencing discretion, the trial court must decide whether to grant or deny the defendant eligibility to participate. ***Id.***; WIS. STAT. § 973.01(3m). If the trial court grants a defendant eligibility, the DOC "may" place the inmate in the CIP. Sec. 302.045(2). The successful completion of the program allows the conversion of the defendant's remaining initial confinement time to extended supervision time. *See* § 302.045(3m)(b).

¶12 Here, we agree with Tate that under the specific facts of this case, his ineligibility for CIP is a new factor. ***Harbor***, 333 Wis. 2d 53, ¶40. One day prior to Tate's sentencing, the DOC issued a new policy excluding inmates convicted of certain offenses under WIS. STAT. chs. 941 and 943 from participating in the CIP. *See* DOC Division of Adult Institutions Policy # 300.00.12, § IV.C.2. The record does not reflect, nor does the State contend, that the trial court or the parties knew about this change rendering Tate ineligible for the CIP.

¶13 In addition, Tate's ineligibility to enroll in the CIP was highly relevant. ***Harbor***, 333 Wis. 2d 53, ¶40. As Tate observes, the trial court's comments at sentencing suggest that the court believed Tate was eligible for the CIP and the SAP, but considered the CIP to be more tailored to Tate's needs. Had the trial court known that Tate was not eligible for the CIP, the court would have had a different decision to make—allow Tate to participate in the SAP or allow him to serve his sentence without any programming.

¶14 The postconviction court found that Tate's ineligibility to participate in the CIP was not a new factor because the sentencing remarks did not "indicate

that [the trial court] predicated [Tate's] sentence on an assumption that [Tate] would necessarily be enrolled in CIP or release[d] any sooner than serving the full confinement term." The State makes a similar argument on appeal. However, Tate did not argue that the length of his sentence should be modified. Rather, Tate argues that his program eligibility determination was based on the incorrect assumption that he was eligible for both the CIP and the SAP.

¶15 The State also argues that the timing of the policy change a day before sentencing "does not transform it into a fact that fundamentally alters the sentencing court's rationale or frustrates its objectives." However, when determining whether a new factor exists, we no longer examine whether the court's sentencing objectives are frustrated. *See id.*, ¶48.

¶16 Lastly, the State emphasizes that once a court decides that a defendant is eligible for the CIP, the final placement decision is up to the DOC. *See* WIS. STAT. § 302.045(2) (stating that if an inmate meets all the eligibility criteria, the DOC "may" place the inmate in the program). Thus, the court would have presumably known that it was possible that Tate might not be placed in the CIP. The new DOC policy, however, removed any discretion from the trial court in this case and eliminated the possibility that Tate would be eligible to participate in the CIP.[7]

---

[7] We note that the postconviction court cited *State v. Schladweiler*, 2009 WI App 177, ¶12, 322 Wis. 2d 642, 777 N.W.2d 114, which held that the DOC's denial of placement in the CIP was not a new factor because the trial court expressly acknowledged that the DOC would make the final determination on participation and the DOC's denial of placement "does not frustrate the purpose of the original sentence." As discussed above, however, the change in the DOC policy here completely eliminated the trial court's discretion to place Tate in the CIP. Additionally, our supreme court has expressly rejected the requirement that a new factor must frustrate the purpose of the sentence. *State v. Harbor*, 2011 WI 28, ¶¶47 n.11, 52, 333 Wis. 2d 53, 797 N.W.2d 828. Thus, we are not persuaded that *Schladweiler* controls here.

¶17    Thus, we conclude Tate's ineligibility for the CIP is a "fact" that is "highly relevant to the imposition of sentence, but not known to the [trial court] judge at the time of original sentencing … because … it was unknowingly overlooked by all of the parties." *Id.*, ¶40 (citation omitted).

## II.    Tate's Substance Abuse Needs Classification

¶18    Tate argues that the DOC's finding that he qualifies for "Substance Abuse Disorder Category 4" is a new factor because his self-reported drug use "was not supported by a neutral third-party's opinion regarding the severity of his substance abuse disorder."  Tate argues that this information is highly relevant because "it contradicts the [trial] court's conclusion that drugs were not a 'major problem.'"

¶19    As the State asserts, Tate was fully aware of his substance abuse issues at sentencing as was his trial counsel and the trial court.  Generally, facts are not "new" if the defendant is unable to claim he or she is unaware of them. *State v. Crockett*, 2001 WI App 235, ¶14, 248 Wis. 2d 120, 635 N.W.2d 2d 673.

¶20    While the DOC's conclusion that Tate required "the highest level of care under the DOC's SUD categories" for his substance abuse needs was not known at the time of sentencing, this court has previously held that an "altered view of facts known to the court at sentencing, or a reweighing of their significance" does not "constitute[] a new factor for sentencing purposes." *Grindemann*, 255 Wis. 2d 632, ¶24; *see also State v. Sobonya*, 2015 WI App 86, ¶7, 365 Wis. 2d 559, 872 N.W.2d 134 (holding that a post-sentencing expert report was not a new fact or set of facts because it was "an expert's opinion based on

previously known or knowable facts").[8] Thus, given that Tate's substance abuse issues were known at the time of sentencing, the DOC's subsequent classification of his substance abuse needs does not constitute a new factor.

**CONCLUSION**

¶21 In sum, we conclude that Tate's ineligibility for the CIP constitutes a new factor; however, the DOC's substance abuse needs classification does not constitute a new factor. Therefore, we reverse in part and affirm in part the postconviction order. On remand, we direct the court to determine whether Tate's ineligibility for the CIP justifies sentence modification. *See **Harbor***, 333 Wis. 2d 53, ¶37.

*By the Court.*—Order affirmed in part, reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] In his briefs, Tate does not address or attempt to distinguish ***State v. Grindemann***, 2002 WI App 106, 255 Wis. 2d 632, 648 N.W.2d 507, or ***State v. Sobonya***, 2015 WI App 86, 365 Wis. 2d 559, 872 N.W.2d 134. We will not make arguments for the parties. *See **State v. Pettit***, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (stating that "[w]e cannot serve as both advocate and judge").